## Hayes v. Commonwealth.

(Decided October 3, 1916.)

# Appeal from McCracken Circuit Court.

1. Burglary.—Is a common law offense, the penalty being fixed by section 1159 of the Kentucky Statutes, and the common law, where it has not been modified or supplemented by statute, is yet in force in this State.

2. Burglary—Definition of.—Burglary is a breaking and entering the mansion-house of another in the night with the intent to commit some felony within the same whether such felonious intent be executed or not.

3. Burglary—Mansion-House—What Is.—A public, charitable institution where poor and destitute persons are kept and cared for is a mansion-house within the meaning of the common law definition of burglary.

4. Burglary—Mansion-House—What Is.—A mansion-house in the law of burglary need not be a house occupied as a residence or home by a family. It will be sufficient if it is a house or home used for the habitation of persons, no matter for what purpose they occupy the same or whether it be a private residence or a public institution.

5. Burglary—Indictment—Intent to Commit a Felony.—Evidence.—It is essential that the indictment should charge that the intent was to commit a felony, naming it, and also to show by evidence, before conviction can be had, that the intent was to commit the felony charged in the indictment.

6. Burglary—Evidence of Intent.—The defendant cannot escape punishment merely by testifying that his intention was not to commit a felony or by the circumstance that no felony was, in fact, committed by him. A conviction may be had on circumstantial evidence, although this circumstantial evidence may be directly in conflict with and contrary to the direct and circumstantial evidence tending to show the innocence of the accused.

7. Burglary—Intent—Failure to Commit a Felony.—The fact that the accused was frightened and ran away before the object of his felonious intent had been accomplished, is not material if, in fact, the intent to commit the felony existed. It is not essential that a felony should actually be committed. It is the intent with which the entrance is made and not what is done after the entrance, which fixes the guilt of the accused.

8. Burglary—Drunkenness—As An Excuse for Crime.—In burglary, as well as other crimes in which a criminal intent is necessary to constitute guilt, it is proper, when the evidence justifies it, to submit an instruction on the drunken or intoxicated condition of the defendant for the purpose of showing that on account of his condition he could not have had the criminal intent.

9.  Burglary—Drunkenness—As an Excuse for Crime—Evidence—Instructions.—The unsupported evidence of the defendant that he was drunk when the facts and circumstances of the case show that he was sober, will not entitle him to an instruction on this subject.  When a defendant undertakes to assert the defense of drunkenness as an excuse for crime, he must support it by something more than his word when his word is contradicted by his acts, which show that he was sober and not drunk.

10.  Criminal Law—Witness—Impeachment of Credibility of—Admonition of Court.—It is competent to offer evidence showing the bad moral character and bad reputation for truth and veracity of the defendant in a criminal prosecution, but when evidence of this nature is offered the court should admonish the jury at the time that the purpose of the evidence is only to affect, if it does affect, the credibility of the defendant as a witness.  But the failure of the court to so limit the effect of the evidence will not be reversible error unless it appears that the attention of the court was called to the necessity for an admonition by an exception, objection or motion, nor even then unless it appears from the whole record that the substantial rights of the accused were prejudiced by the failure to limit the effect of the impeaching evidence.

SAMUEL H. CROSSLAND and CLAY & REED for appellant.

M. M. LOGAN, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The indictment charged the appellant with the offense of burglary committed in manner and form as follows: "That said Guthrie Hayes in the said county of McCracken on the seventh day of January, 1916, and before finding this indictment, did feloniously and in the nighttime break and enter the house of the Home of the Friendless, same being a charitable institution in the city of Paducah, where poor and destitute persons are kept and cared for, with the intention of committing a rape upon and having sexual intercourse with some female in said house against her will.  The said breaking and entering aforesaid consisted in using force and violence to a window thereto, same being a part of said house used and occupied by the Home of the Friendless, against the peace and dignity of the Commonwealth of Kentucky."

The Home of the Friendless is a reformatory institution for young girls located in the city of Paducah, and at the time of the offense charged against the de-

fendant there were confined in the institution about fifty homeless or delinquent young girls in charge of a matron and other officers and attendants.

The appellant, who was about nineteen years old, in company with a young fellow named Earl Phoenis, went to the building occupied by this institution at a late hour one night, and after securing an entrance by forcibly opening a window secured by a lock, he and his companion, each in the possession of a gun, went into the building. Soon after their entrance the noise they were making disclosed their presence to some of the inmates, who turned on the electric lights, and immediately thereupon the appellant and his companion made their escape from the building, firing, as they fled, several shots from the guns in their possession.

It further appears from the evidence that the appellant had been seen loitering about the premises on several occasions previous to this with the purpose of meeting or speaking to a girl about sixteen years old confined in the institution and whom he had known before her commitment.

The appellant in his own behalf testified that he went to the institution for the purpose of seeing this girl, whom he had known all his life, and had met clandestinely at the gate or in the yard of the institution several times before this and in the building two or three times. That they had been sweethearts for a long time and he had received from her letters, some of which were exhibited in the evidence. That on the night in question he was drunk and went to the institution with Phoenis for the purpose of seeing this girl, but did not see her on account of their discovery before he had opportunity. He further testified that he never had any immoral or improper relations with the girl and did not go to the Home this night for any immoral purpose or with the intention of raping or having intercourse with her. That on account of his inebriated condition he could not say for what purpose he and his companion carried loaded guns. He denied breaking the lock on the window and said that the window through which he entered the building was open at the time he went in.

Although it was shown that at other times he had met this girl in the building and on the premises connected therewith, there is no evidence that on this occa-

sion he went there under any understanding or arrangement with her or that she knew he would come.

With the evidence substantially in this condition, the court, in connection with an instruction on the subject of reasonable doubt, and after advising the jury that they could not convict the appellant unless they believed that he forcibly broke into and entered the house for the purpose of committing a rape by having sexual intercourse with some female in the house, against her will, told the jury that if they believed "from the evidence in this case to the exclusion of a reasonable doubt, that in this county and before the finding of the indictment, the defendant, Guthrie Hayes, did feloniously in the night-time break and enter the house of the Home of the Friendless, same being a charitable institution in the city of Paducah where poor and destitute children are kept and cared for, and that he did so with the intention of committing a rape by having sexual intercourse with some female in said house against her will, and that the said breaking consisted in using force and violence to a window thereto, which was a part of said house or Home of the Friendless, then you will find the defendant guilty of a felony and fix his punishment at confinement in the penitentiary of this State for an indeterminate sentence and indefinite period of time, not less than a certain time nor more than a certain other time, to be named and fixed by you in your verdict; but in fixing his punishment under this instruction, if you do fix any, you cannot fix it at less than two years nor more than ten years in the penitentiary."

Under the evidence and instructions the jury found the appellant guilty and fixed his punishment at confinement in the penitentiary for not less than three years nor more than three years and one month, and the court sentenced him to confinement in the House of Reform until he became twenty-one years of age, and then to the State Penitentiary for the remainder of his term.

On this appeal a reversal is asked because of error of the trial court in overruling a demurrer to the indictment, in refusing to direct the jury to find the appellant not guilty, and in misinstructing the jury.

First, as to the indictment: The statute law of Kentucky does not describe the offense of burglary. It is merely provided in section 1159 of the Kentucky Statutes that "Every person guilty of . . . burglary shall be con-

fined in the penitentiary not less than two nor more than ten years.'' Burglary, however, is a well known common law offense, and as the common law, where it has not been modified or supplemented by statute, is yet in force in this State, and especially so in respect to the crime of burglary, the existence of which as a common law crime has been recognized in the statute law by providing a penalty therefor, we must turn to the common law for a description of this offense.

In the standard common law work of Russell on Crimes, vol. 1, page 785, burglary is described as ''a breaking and entering the mansion-house of another in the night with the intent to commit some felony within the same, whether such felonious intent be executed or not.'' It will thus be seen that there are three essential ingredients in this offense: (a) a breaking and entering in the night-time (b) of the mansion-house of another (c) with intent to commit some felony.

The indictment charged the breaking and entering in the night-time of the charitable institution known as the Home of the Friendless with the intention of commiting a rape upon some female in the house. It is, therefore, obvious that if the Home of the Friendless comes within the fair meaning of a mansion-house, the indictment set out all the facts necessary to constitute a good indictment. Conceding this to be true, the only ground upon which the sufficiency of the indictment is assailed is that a public charitable institution where poor and destitute persons are kept and cared for is not a mansion-house within the common law definition of a mansion-house.

Turning again to Russell on Crimes, vol. 1, page 797, we find that ''every house for the dwelling and habitation of man, is taken to be a mansion-house in which burglary may be committed.'' It need not be a house set apart or used for a dwelling-house as the term dwelling-house is commonly understood. Nor need it be a house occupied as a residence or home by a family, as many houses are occupied. It will be sufficient if it is a house or home used for the habitation of persons no matter for what purpose they are occupying the house, or whether it be a private residence or a public institution. If it is a public institution in which persons are confined, as for example a home for the friendless or destitute, it will be treated as a mansion-house in the meaning of the law

of burglary. Nice distinctions as to the use to which
the house is put, or the purpose for which it is occupied
by the inmates thereof, should not be allowed to defeat
the spirit and intent of the law, which is to punish any
person who, with a felonious intent, makes a forcible
entry in the night-time into a house that is occupied by
the persons as a dwelling or habitation.

We, therefore, think the indictment was good, and
that the court did not commit error in overruling the
demurrer.

Second, as to the refusal of the court to direct the
jury to return a verdict for the defendant: There was
some conflict in the evidence as to whether the house
was forcibly broken into or an entrance obtained through
a window that was open when the defendant went to the
house for the purpose of getting in. But the weight of
the evidence tends to show that the window through
which the entrance was made was fastened with a lock
and that this lock or fastening was broken by the de-
fendant or his companion to enable them to secure an
entrance into the building. Upon this point there was
ample evidence to justify the jury in finding that forci-
ble means were used by the defendant and his compan-
ion to obtain an entrance.

But passing this, it is seriously urged that the evi-
dence for the Commonwealth wholly failed to show that
the entry was made with the felonious intent to commit
the felony charged, and this being so, the jury should
have been instructed to acquit the defendant. Of course,
if there was no evidence, direct or circumstantial, tend-
ing to show that the breaking was with the intent to com-
mit the felony charged, the defendant should have been
acquitted, because the intent to commit the felony which
is charged in the indictment is an indispensable ingred-
ient of the offense. Kyle v. Com. 111 Ky. 404; Radley
v. Com. 28 Ky. Law. Rep. 477.

In support of the proposition that there was a fail-
ure of proof on this vital issue the argument is made
that the only direct evidence in the case on this point
was confined to the testimony of the defendant, who said
that he went into the building for the purpose of seeing
a girl acquaintance and without any purpose of com-
mitting a rape upon her or any other girl there con-
fined or a felony of any kind. Of course, if the case
should be controlled by this evidence alone in conjunc-

tion with the other circumstance that no felony was, in fact, committed, there should have been an acquittal. But in cases like this the defendant cannot escape punishment merely by testifying that his intention was not to commit a felony or any other offense, or by the circumstance that no felony or other offense was, in fact, committed by him. The jury had the right to and doubtless did consider the evidence of this witness and the other circumstances tending to support it and gave to it such weight and effect as in their judgment it was entitled to. But in this class of cases a conviction may be had on circumstantial evidence, although this circumstantial evidence tending to show the guilt may be directly in conflict with and contrary to the direct and circumstantial evidence on behalf of the accused tending to show his innocence of the crime charged.

Judged by ordinary standards, it is unreasonable to believe that the defendant would have armed himself with a loaded gun and forcibly entered a building on a peaceful or innocent errand or without having the intent to commit some crime. Boys nineteen years old do not conduct themselves in this violent and disorderly way merely as a joke or for innocent or harmless purposes. Nor is it believable that a young man would arm himself with a loaded gun and break into an institution like this merely for the purpose of paying a friendly, social visit to a girl of his acquaintance. The jury had the right in their discretion to believe from all the facts and circumstances in the case that the defendant entered the building in the manner described with the intent to commit the felony charged, and the fact that he was frightened and ran away before the object of his felonious intent had been accomplished is not material, if, in fact, that intent to commit the felony existed. It is not essential, after an entrance has been made, that a felony should actually be committed. The commission of the felony charged is not an indispensable ingredient of the crime. It is the intent with which the entrance is made and not what was done after the entrance, that fixes the guilt of the accused.

The instructions, we think, submitted correctly the law of the case, although it is contended that an instruction should have been given advising the jury that if they believed from the evidence that the defendant, from the use of intoxicating liquors, was so drunk as to be

incapable of having an intent to commit the felony charged, they should acquit him.

In burglary as well as in other crimes in which a criminal intent is necessary to constitute guilt, it is proper when the evidence justifies it, to submit an instruction on the subject of the drunken or intoxicated condition of the defendant at the time of the commission of the acts charged, for the purpose of showing that on account of his drunken or intoxicated condition he could not have had any criminal intent; Kehoe v. Com. 149 Ky. 400; Terhune v. Com. 144 Ky. 370; Mearns v. Com. 164 Ky. 213.

But we do not think the evidence in this case was sufficient to support an instruction on the subject of drunkenness. It is true the defendant testified that he was drunk, but, as said in Brennon v. Com. 169 Ky. 815, "there is a large difference between being drunk and being drunk to such an extent as not to know the acts one commits or their quality." The defendant may have been drunk, but, nevertheless, judging from his evidence, he knew everything that he did as well as the things that he did not do, and attempted to establish by his evidence every fact necessary to show his innocence of the crime charged. He had sufficient sense and discretion to arrange a plan for getting in the house and to escape when discovered, and to take off his shoes and put them in his pocket so that he would make no noise in walking. A criminal who has sufficient mind and memory to give a connected narrative of everything that happened and to relate in detail all the facts and circumstances that might excuse his conduct, is not in a good position to insist that he was entitled to an instruction on the subject of drunkenness merely because he testifies that he was drunk. The unsupported evidence of the defendant that he was merely drunk, when all the facts and circumstances in the case show that he was sober, will not entitle him to an instruction on this subject nor will the failure to so instruct be prejudicial error. The defense of drunkenness as an excuse for crime is not looked on with much favor, and when a defendant undertakes to assert a defense like this, he must support it by something more than his mere word when his word is contradicted by his acts, which show that he was sober and not drunk.

There is a further contention that the trial court committed error in not advising the jury as to the purpose of the evidence attacking his reputation for morality and truth. When the defendant offered himself as a witness, it was admissible to show that his moral character and reputation for truth and veracity were bad, for the purpose of affecting his credibility as a witness. It has, however, been written that when evidence of this nature is offered, the court should at the time admonish the jury that the purpose of the evidence is only to affect, if it does affect, the credibility of the defendant as a witness. But the failure of the court to so limit the effect of the evidence by an admonition will not be reversible error unless by an exception or objection or motion made at the time the attention of the court is called to the necessity for so admonishing the jury, and the failure even then to so admonish the jury will not be reversible error unless it appears from the whole record that the substantial rights of the accused were prejudiced by the failure to limit the effect of the impeaching evidence; Ochsner v. Com. 128 Ky. 761; Newman v. Com. 28 Ky. L. R. 81; Fueston v. Com. 91 Ky. 230; Johnston v. Com. 170 Ky. 766. In the case we have no objection was made to the evidence impeaching the character of the defendant, nor was the attention of the court called by his counsel to the necessity of admonishing the jury as to its effect; nor was its admission prejudicial to the substantial rights of the accused.

Upon the whole case, we think the punishment imposed by the jury no more than the appellant deserved. Wherefore, the judgment is affirmed.