## Roop v. Commonwealth.

(Decided February 8, 1924.)

## Appeal from Bell Circuit Court.

1. Homicide—Life Sentence Held Not too Severe.—Life sentence held not too severe for killing another who was pursuing a course which was carrying him away from instead of toward accused, though deceased was carrying a knife.

2. Criminal Law—Continuance for Absent Witness Discretionary.— Where, in prosecution for homicide, affidavits are offered by the defense stating the absence of one or more material witnesses, and the facts which such absent witness or witnesses would, if present, prove, providing such evidence is otherwise relevant and competent, the right to a continuance is a matter for the discretion of the court.

3. Criminal Law—Commonwealth Not Required to Admit Truth of Affidavits as to Absent Testimony.—Court denying continuance because of absence of witnesses did not err in refusing to require the Commonwealth to admit the truth of the affidavits offered by the defense regarding what absent witnesses would testify, in view of Criminal Code of Practice, section 189, as amended by Laws 1920, c. 57.

4. Homicide—Commonwealth Properly Permitted to Show Deceased was Subject to Epilepsy.—In prosecution for homicide, court did not err in permitting evidence in behalf of the Commonwealth to the effect that deceased was subject to epilepsy, and that he had previously been confined in an insane asylum, especially as defendant placed in evidence habits or moral character of the deceased.

5. Witnesses—State May Prove Reputation and General Moral Character of Defendant Testifying.—Where accused has testified in his own behalf, the Commonwealth may in rebuttal introduce evidence as to his reputation and general moral character, subject to limitation that it should be admitted under admonition that it affects alone the credibility of the defendant as a witness.

6. Criminal Law—Failure of Court to Limit Testimony Not Error, Unless Attention Drawn Thereto.—Where testimony is admitted tending to impeach the credibility of the defendant as a witness, the failure of the court to admonish the jury that such evidence goes only to the credibility of the defendant cannot be relied upon as error, unless the attention of the court was drawn to the matter.

7. Criminal Law—Objection to Evidence Sufficient to Call Court's Attention to Necessity for Limiting Use.—The defendant, by objecting and excepting to admission of evidence as to his reputation and moral character, sufficiently called the court's attention to the necessity for an admonition that such testimony could

only be considered as affecting defendant's credibility as a witness.

8. Criminal Law—Failure to Limit Testimony Not Reversible, Unless Prejudicial.—Failure of court to admonish jury as to consideration of testimony introduced to impeach the credibility of the defendant as a witness will not require a reversal, unless under all the circumstances it was plainly and clearly prejudicial to the substantial rights of the defendant.

9. Criminal Law—Failure to Limit Impeaching Testimony Held Not Prejudicial.—Failure of court to admonish the jury as to the consideration of evidence of defendant's reputation and moral character, held not reversible error.

10. Homicide—Witness should have been Permitted to Testify Deceased had Knife Before Trouble.—In a murder case, court erred in refusing to permit witness to testify that 30 minutes before the killing deceased had a knife in his possession, and opening it asked another if he wanted to fight.

11. Homicide—Exclusion of Evidence of Possession of Knife by Deceased Held Not Reversible.—Error of the court in not permitting witness to testify that 30 minutes before the killing he saw deceased with open knife asking another if he wanted to fight him was not prejudicial, where it was not denied that just prior to the shooting deceased not only had a knife, but exhibited it to numerous witnesses who testified.

12. Homicide—General Moral Character of Deceased Not Involved.—The general moral character of deceased was not involved in a homicide prosecution.

13. Homicide—Evidence Held to sustain Conviction for Murder.—Evidence held to sustain conviction for murder.

14. Criminal Law—No New Trial on Ground of Cumulative Newly Discovered Evidence.—A new trial will not be granted on account of newly discovered evidence, which is merely cumulative.

15. Criminal Law—Newly Discovered Evidence Should be of Decisive Character.—To authorize new trial, newly discovered evidence should be of such convincing character as to have a decisive influence on or against the evidence to be overthrown by it.

JAMES G. ROLLINS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

This case comes on appeal from the Bell circuit court, wherein one Charley Roop was indicted and tried for the killing of John Grubbs and given a manslaughter sentence of 21 years.

On Sunday afternoon, November 4, 1923, a number of miners had congregated on the front porch of Coleman's commissary at Fox ridge, a small mining camp in Bell county, which spot seemed by common consent to have been the gathering place where miners spent their leisure hours. The building had a front porch about eight or nine feet above the ground with a number of steps leading to it. On the afternoon in question appellant and deceased were, among others, gathered at their favorite haunt, and they became engaged in what was seemingly a friendly conversation regarding a cow and horse trade, appellant stating that he had received a splendid offer for a cow he possessed, when deceased said, "Roop, if I loved a liar, I would hug your neck." It is further shown that he was laughing when he made this remark, which, however, seemed offensive to appellant, and some unpleasant words ensued, during which the deceased drew a knife and said to appellant, "If you want to fight, we will fight it out right here." The evidence further discloses the fact that several of those standing around interfered. and quiet was restored, deceased placing the knife in his pocket.

As to subsequent events, the testimony is somewhat conflicting, but it appears that appellant started to leave the scene of the trouble and walked down the steps leading to the porch in a direction that would have carried him toward one end, and just as he reached the ground he turned and fired twice at the deceased, who had started down the steps, seemingly in a direction carrying him away from appellant.

The testimony of numerous witnesses was to the effect that the deceased had no weapon and his hands were by his side. After firing the two shots mentioned, which did not take effect, appellant called to the deceased not to come any farther and immediately fired two more shots, at the first of which the deceased fell backward upon the steps mortally wounded. It is further shown by the evidence that when the first shots occurred the participants were not more than eight or ten feet apart and at the second, 28 feet intervened, tending to prove that the deceased was not approaching appellant when he shot him. He was taken to the home of his sister a short distance away, and lived but a few moments. It was further shown that his knife was found closed in his pocket.

From the evidence of a number of witnesses testifying for the Commonwealth, as well as that of the mother of deceased, it would appear that he was sadly afflicted with epilepsy and the slightest excitement would produce one of these attacks—which seems to have been the case at the time he was shot—rendering him in a practically helpless and pitiable condition.

In the evidence of appellant, wherein he endeavored to justify himself for this shooting, he stated that the deceased was approaching him with an open knife, and he shot to prevent his being cut. This contention, however, is not substantiated by a number of witnesses for the Commonwealth, who stated positively that the deceased was pursuing a direction that would have taken him away from appellant and that at all times he was totally unarmed; and consequently we are of the opinion that no extenuating circumstances appear, nor can any excuse be offered for the wanton killing of this afflicted and apparently helpless man. While he was shown to have been high tempered and was not justified in his remark, still, after he had placed his knife in his pocket and was apparently in a harmless and inoffensive attitude, appellant could offer but little excuse for shooting him in the manner that an abundance of evidence to that effect would indicate. He had descended the steps and could have gone on his way, thus preventing this unfortunate affair. Even if deceased had carried a knife in his hand (which we think is conclusively shown he did not), the course he was pursuing down the steps would have carried him away instead of toward appellant, and under all the circumstances we cannot feel that the judgment carrying a sentence of twenty-one years was too severe for the atrocious and wilful taking of a human life with apparently but little provocation and seemingly done with a wanton and reckless disregard of the law.

In his motion for a new trial attorney for appellant cites seven grounds upon which he bases his contention that the judgment should be reversed, with which we shall deal in their order.

"1. Because the court erred in overruling the demurrer to the indictment herein."

The indictment was properly drawn, and there is nothing in this contention.

The 2nd and 3rd we shall consider together:

"2.    Because the court erred to the prejudice of the defendant's substantial rights in overruling his motion to set aside the swearing of the jury, and continue the case on account of the absence of George Carpenter, who had been in court, sworn as a witness, admonished by the court, and placed in the witness room, and who when called did not answer and could not be found and whose testimony was material to defendant's defense.

"3.    Because the court erred in overruling defendant's motion to the effect that the affidavit of George Carpenter read to the jury over defendant's objection, who insisted on the personal attendance of said witness, be accepted as true statements of said witness by the jury."

The trial court very probably overruled the motion of appellant's attorney that he instruct the jury to the effect that the matter contained in the affidavit of George Carpenter was true, as section 189 of the Criminal Code does not require the trial court to continue a case because of the absence of a material witness. If affidavits are offered by the defense stating the absence of one or more material witnesses and the facts which such absent witness or witnesses would, if present, prove, provided such evidence is otherwise relevant and competent, the right to a continuance under such circumstances is a matter for the discretion of the court; nor is the Commonwealth's attorney required to admit the truth of the affidavits offered by the defense and only to the extent that such absent witness would, if present, testify as alleged in the affidavit. Therefore, we feel that appellant's motion: first, that the jury be dismissed and a continuance granted owing to the absence of this witness; and second, that the Commonwealth be required to admit the affidavit he offered to be read as a deposition of George Carpenter to be accepted by the jury as a true statement of said witness, was properly overruled.

Subsection 2 of section 189 of the Criminal Code providing that subsection 1 of the same section shall not apply to a motion for a continuance made at the same term at which the indictment is found, as was the fact in the case at bar, has been repealed by an amendment to section 189, which re-enacts in its entirety the first sub-

section and omits completely the second. Therefore, the two grounds are not tenable.

> "4.   Because the court erred to the prejudice of defendant's substantial rights in the admission of evidence over defendant's objections, which evidence was incompetent, and in sustaining objections to evidence offered by the defendant in his behalf, which was competent."

Counsel for appellant earnestly argues that certain evidence in behalf of the Commonwealth to the effect that the deceased was subject to epilepsy and that he had been previously confined in the insane asylum was incompetent and prejudicial.   However, this contention is entirely without merit, and it is always proper for the state to show the relative physical strength of the parties by establishing the victim's age at the time of the alleged crime, his height, state of health and his mental and physical condition immediately after receiving a wound; and that he was intoxicated at the time and unable to make or resist attack.   30 C. J. 175, 176.   This is especially true if the defendant places in issue the habits or moral character of the deceased.   The Commonwealth is then entitled to show that his reputation as a bad or dangerous man was attributable to a cause beyond his control, such as fits or spasms common in cases of epilepsy; and in the case at bar appellant in his testimony stated that he knew the deceased as a very dangerous man.   Counsel for appellant further objects to the introduction and admission of proof by the Commonwealth as to his reputation and general moral character.   However, it appears that this evidence was used in rebuttal only and after appellant had testified in his own behalf.   Under such circumstances it is well settled that the defendant in a criminal prosecution may be impeached by proof of general reputation for immorality as any other witness, subject, however, to the limitation that such evidence should be admitted only under the admonition that it affects alone the credibility of the defendant as a witness. Combs v. Commonwealth, 160 Ky. 386.

A further contention of counsel, that because appellant did not offer any proof of his own good moral character the Commonwealth is thereby precluded from attacking it, is not well taken, since he testified as a witness in his own behalf; and the only cause for complaint which

he could have in this connection lies in the fact that the court failed to admonish the jury that such evidence goes only to the credibility of the defendant as a witness. However, where testimony is admitted tending to impeach the credibility of the defendant as a witness, the failure of the court to admonish the jury cannot be relied upon as error unless the attention of the court has been drawn to the matter in some way, as pointed out in McDaniel v. Commonwealth, 185 Ky. 608, in which it is held:

"It is the duty of the court to instruct or admonish the jury as to the purpose and effect which should be given to impeaching testimony, but the error in failing to do so will be considered to have been waived unless the complaining party objected to the testimony at the time or moved for its exclusion, or requested the court to give the admonition, or in some way called the attention of the court to the error; for such admonitions are not technically instructions under the requirements of the Code that instructions should be in writing and that the court should instruct the jury in criminal cases upon the whole law of the case. But although the court's attention might be called to the error and it should fail to admonish the jury as to the purpose and effect of the testimony the judgment will not be reversed for the error unless it be both a material and prejudicial one."

The defendant in this case objected and excepted to the admission of this evidence, which is one of the approved methods of calling the court's attention to the necessity for an admonition; hence we feel the court erred in not admonishing the jury as to the purpose thereof; but a reversal will not be and should not be directed because of this error unless under all the circumstances it is plainly and clearly prejudicial to the substantial rights of the defendant. Johnston v. Commonwealth, 170 Ky. 766; Hayes v. Commonwealth, 171 Ky. 291; Day v. Commonwealth, 173 Ky. 269; Renaker v. Commonwealth, 172 Ky. 714; and McDaniel v. Commonwealth, *supra.*

We do not regard the court's failure to give the admonition in this case as prejudicial, and a reversal will not be ordered because thereof.

Counsel further contends that question 4 (page 52, transcript), an objection to which by the Commonwealth was sustained by the court, is competent. It appears that Alley Girtman, a witness who had testified for the Commonwealth, was called by counsel for defendant and placed upon the stand as his witness, and was then asked if he had seen the deceased before the shooting, to which he replied that he had, about half an hour before. Counsel then said, "Tell the jury whether or not he had a knife." To this question counsel for the Commonwealth objected and was sustained.

In an avowal for appellant it appears that the witness, if permitted to answer, would state that about thirty minutes before the trouble and at the time and place where the killing occurred the deceased pulled a knife out of his pocket, and partially opening it asked another man if he wanted to fight him.

Under these circumstances we are inclined to believe that the court should have permitted the witness to answer this question, and under other conditions its refusal to do so do might have constituted reversible error. For example, if no knife had been found in the pocket of deceased, or if no evidence other than appellant's had been produced to show that deceased had one at the time of the difficulty, we feel it would have been not only competent but entirely proper for evidence to be produced tending to show that he possessed one only half an hour before, and at the very spot where the trouble ensued. However, in this case it is not denied that just prior to the shooting the deceased not only had a knife but exhibited it to numerous witnesses who testified. Consequently we cannot feel that the interests of appellant were in anywise jeopardized by this possible mistake on the part of the trial court.

Numerous other objectons relative to testimony are made by counsel, but we do not feel that they are material or possess such merit as to warrant further discussion of them, as they relate principally to evidence concerning the general moral character of the deceased, which was not involved, and even if bad, could not in any way affect the guilt of appellant. In Commonwealth v. Hoskins, 18 R. 59, it is read:

"In cases of homicide testimony going to show the violent character of the deceased is admissible where it is shown that the deceased had threatened

and was about to assault the accused; but testimony as to the general moral character of the deceased is not competent."

"5. Because the court erred in failing to properly instruct the jury as to the whole law of the case, and gave instructions prejudicial to his rights, in this case."

This ground is without merit as we are convinced that the instructions were admirable and covered every phase of the law.

"6. Because the verdict is both against the law and the evidence."

As stated above we cannot find anything in the testimony of a nature calculated to sustain this contention, and from the preponderance of evidence it appears to us conclusively that such a verdict was entirely proper and thoroughly warranted.

"7. Because the defendant had discovered important evidence in his favor, since the verdict was returned herein, and that he did not know about, or could not have discovered before said trial, the nature of which is set forth in defendant's affidavit filed herewith."

The affidavits of Dillard Wilson and Robert Burns are filed, in which they claimed deceased was following appellant down the steps of the place where he was shot, with a knife in his hand, and Roop told him to stop and not to come farther, and he continued to advance toward Roop, at which time the shooting occurred; and further that they would swear to this in court and also that deceased was a dangerous man. The statements contained in the two affidavits are practically identical and tend to show that if Wilson and Burns had testified, their evidence would have been merely cumulative, since there is abundance of proof in the record of other witnesses bearing on the same points and reciting substantially the same facts, as is shown by defendant's testimony (pages 105, 107, 108, 110 and 113, transcript), and that of witnesses Sellar (pages 116, 117, 119, 120, transcript); Patterson (123, 124, 125, transcript); Waldon (pages 128, 129, 130, transcript); Laws (pages 136, 137, transcript); Nora Lee (page 141, transcript) and Dewey Carpenter (pages 143, 144, 145, 146, transcript).

This court has repeatedly held that a new trial will not, and should not, be granted on account of newly discovered testimony which is merely cumulative, and to authorize one, newly discovered evidence should be of such convincing character as to have a decisive influence on or against the evidence to be overthrown by it. Ray v. Commonwealth, 184 Ky. 800; May v. Commonwealth, 153 Ky. 141; Ellis v. Commonwealth, 146 Ky. 715.

Manifestly the affidavits of Wilson and Burns do not meet the test laid down by this court with reference to newly discovered evidence, and the court very properly overruled defendant's motion.

Let the judgment be affirmed.