## Moore v. Commonwealth.

(Decided April 22, 1927.)

### Appeal from Clark Circuit Court.

1. Indictment and Information.—Indictment for receiving stolen prop-
erty held not fatally defective, because of clerical error in use in
single instance of defendant's name in place of name of person
from whom he was alleged to have received the goods, in view
of Criminal Code of Practice, section 122, subsec. 2.

2. Receiving Stolen Goods.—Evidence held to sustain conviction for receiving stolen property, particularly in view of presumption arising under Ky. Stats., section 1199.

3. Criminal Law.—Where defendant as a witness admitted that he had been convicted of a felony, adding that it was for shooting craps, it was court's duty to admonish jury that answer should be considered only for purpose of·impeachment, though failure to do so was not reversible error.

BENTON & DAVIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant was convicted of the offense of knowingly receiving stolen property and sentenced to serve four years in the penitentiary. He urges three grounds for reversal of that judgment; the first being that his demurrer to the indictment should have been sustained.

The accusatory part of the indictment aptly charges the appellant with the offense for which he was convicted. In the descriptive part the indictment recites that the appellant did unlawfully and feloniously receive from Woodford Clay a lot of meat, cigarettes, lard, and other articles of greater value than $20, which was the property of the Hodgkin Grocery Company, a corporation. The indictment thereafter, aptly stating that this property had been stolen from the Hodgkin Grocery Company by Woodford Clay, recites:

"And the said Moore then and there well knowing that said property, the stealing whereof is punished as a felony, had been unlawfully and feloniously stolen by said *Moore*, did unlawfully and feloniously receive the same from said Clay, with the fraudulent intent then and there to convert the same to his own use, and to permanently deprive said owner of its property therein."

It will be noted that the draftsman of the indictment inadvertently used the name "Moore," where we have italicized it, in place of the name "Clay," and it is because of this fact that the appellant says the indictment was fatally defective. Subsection 2 of section 122 of the Criminal Code provides that an indictment must contain a statement of the acts constituting the offense in ordi-

nary and concise language, and in such a manner as to enable a person of common understanding to know what is intended. This indictment, when read as a whole, so plainly charges Woodford Clay with the stealing of the property in question, and the appellant with knowingly receiving that property from Clay, that no person of common understanding would have been misled by the mistake in the use of the name "Moore" in place of "Clay," mentioned above. It was a clerical error, which did not vitiate the indictment. Cf. Vanmeter v. Commonwealth, 214 Ky. 797, 284 S. W. 80.

It is next contended that the motion for a peremptory instruction should have been sustained. The facts are these: During the night preceding July 4, 1925, the place of business of the Hodgkin Grocery Company was broken into, and a large quantity of cigars and cigarettes, together with some meat, lard, and sugar, were stolen. The wholesale value of the cigars and cigarettes alone was in excess of $400. About daybreak of July 4th the officials of the grocery company discovered their loss, and one of them in company with a peace officer of Winchester went out in an automobile to see if they could find any trace of the thief. Just about sunrise they found the appellant in front of his home, fixing a flat tire on his automobile, in which was loaded a large quantity of the stolen cigars and cigarettes. On the back porch of his home was found the lard, in his smokehouse the meat, and in a closet in the kitchen some of the sugar.

The commonwealth's witnesses say that, when the appellant discovered the presence of the grocery company official and the peace officer, he stated that he was then on his way to the police station with the cigars and cigarettes found in his machine. The appellant testified that he ran a restaurant in the negro section of Winchester, and about 8 o'clock that night Woodford Clay told him that a couple of men had some groceries which had been salvaged from a train wreck up the road, and which had been given them by the foreman of the railroad crew engaged in clearing up the wreck, and which they wished to dispose of, and he wanted to know if the appellant wished to buy them. Appellant says that he replied that he did not want them if they had been stolen, but that, on being assured that they had not been stolen, but were salvaged from the wreck above mentioned, he agreed to buy them. He says that they were delivered to his house

that night between 1 and 2 o'clock by two men whom he does not know, and who came to his house under the guidance of Woodford Clay.

Certain witnesses introduced for the commonwealth, however, say that Woodford Clay alone wheeled these goods in a wheelbarrow to appellant's home.   Appellant admits that he only paid $70.00 for the goods he bought, and further admits that he knew at the time that they were worth probably 10 times what he paid for them. It is perfectly obvious that this was a case for the jury. Davidson v. Commonwealth, 219 Ky. 251, 292 S. W. 754. Section 1199 of the Kentucky Statutes makes the possession of stolen goods prima facie evidence of guilt of the offense for which appellant was being prosecuted.   It is not hard to understand why the jury rejected his explanation, for certainly the reception of goods at the hour of the night he received them, and his effort to get away with them so early in the morning, accompanied by the inadequacy of the price paid for them, were hardly compatible with honest dealing on his part.

Lastly, it is contended that the court erred in failing to admonish the jury as to the effect of certain impeaching testimony.   When appellant was on the stand, the commonwealth inquired of him whether or not he had ever been convicted of a felony.   Over his objection he was required to answer, and he said that he had, but added voluntarily that it was for shooting craps.   The appellant does not contend here that the question was incompetent, but does insist that, having objected to the question, it was the duty of the court to admonish the jury that the answer should not be considered by them as substantive testimony, but only for the purpose of impeaching his credibility, if they believed it did so.   Appellant is correct in saying the court should have given this admonition.   However, in McDaniel v. Commonwealth, 185 Ky. 608, 215 S. W. 544, we said that, although it is error to refuse to give the admonition, "the judgment will not be reversed for the error, unless it be both a material and prejudicial one."   In Roop v. Commonwealth, 201 Ky. 828, 258 S. W. 667, in speaking to a like contention, we said:

"But a reversal will not be and should not be directed because of this error, unless under all the

circumstances it is plainly and clearly prejudicial to the substantial rights of the defendant.''

And in that case the court declined to reverse the judgment because of that error. We do not think the failure to admonish the jury in this case was a prejudicial error.

Judgment affirmed.