## Jamerson v. Commonwealth.

(Decided November 25, 1927.)

### Appeal from Monroe Circuit Court.

1.  Criminal Law.—Juries are the judges of the facts and credibility of witnesses, and may accept the testimony of one set of witnesses and reject that of another.
2.  Criminal Law.—Conviction of voluntary manslaughter held not so against the weight of evidence as to indicate passion and prejudice warranting new trial.
3.  Homicide.—Instruction in murder trial that jury could not acquit defendant on ground of self-defense, if he shot deceased in resisting, using no more force than appeared reasonably necessary to eject him from deceased's home on his refusal to leave, held prejudicially erroneous, in view of evidence clearly showing that defendant had abandoned difficulty and left house.

B. F. DENHAM, R. G. RAILEY and CHAS. HARLAN for appellant.

FRANK E. DAUGHERTY, Attorney General,- and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant, Walter Jamerson, was indicted by the grand jury of Monroe county for the murder of Bob Finley and on his trial was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a period of 21 years.

The errors assigned in his motion and grounds for a new trial are that the instructions are erroneous and the verdict is flagrantly against the evidence.

Finley, who had recently married, rented a one-room house from appellant at $2 a month, and was to have the use of a stove and safe while he occupied the house. On October 31, 1926, appellant and his son-in-law, Clarence Emberton, went to the home of Finley to get the stove and safe; appellant being in a two-horse wagon and Emberton riding a mule. When appellant arrived at the Finley home, Finley and his wife were out of the house, but Mrs. Purdue, Finley's mother-in-law, called them at appellant's request. Appellant left the wagon standing in the road which passes a few feet from the front of the house and went to the front door and waited for Finley to appear. When Finley came into the house, appellant notified him that he had come for the stove and safe. Finley told him that he had paid his rent until some time in November and that appellant could not have the articles until the lease expired. Appellant claimed that the rent had only been paid to October 15, and that he would have the sheriff remove the articles. Appellant and Finley engaged in a heated argument, resulting in Finley ordering appellant from the house. Appellant returned to the wagon, rode a short distance down the road, turned around, and when he reached a point in the road immediately in front of the house, Finley was standing on the side of the road with an ax handle in his hand.

From this point there is an irreconcilable conflict between the evidence of the commonwealth and that of the defense. Mrs. Purdue, mother-in-law of Finley, testified that appellant stopped the wagon, got out into the road on the opposite side of the wagon from the point where Finley was standing, and began to curse and abuse Finley; that he got back into the wagon, drew a pistol from his pocket, and shot Finley, who was standing by the side of the wagon leaning on the ax handle and doing nothing. Appellant testified that he left Finley's house intending to go home; that when he turned the wagon

around and reached the point in front of the house he stopped the wagon on account of Emberton's mule being in front of him; that when he stopped Finley approached and began striking at him with the ax handle; that he got off the wagon, and Finley pursued him, striking him a number of times; that he again climbed on the wagon, procured a pistol from a basket, and fired at Finley while the latter was in the act of striking him with the ax handle. The appellant is 78 years of age, and he claims that, as Finley was a young man weighing about 200 pounds, he believed he was in danger of death at the latter's hand when he fired the fatal shot. Appellant's testimony was corroborated as to the main features by his son-in-law, Emberton.

It will therefore be seen that there was an irreconcilable conflict in the testimony as to how the killing occurred. If the testimony of the appellant is true, he should be acquitted on the ground of self-defense, but, if the shooting occurred as described by the witness Mrs. Purdue, then it was done without justification.

Juries are the judges of the facts and of the credibility of witnesses, and it was within the province of the jury in this case to accept the testimony of one set of witnesses and reject that of another set. The verdict was not so much against the weight of the evidence as to make it appear that it was the result of passion and prejudice on the part of the jury.

In instruction No. 4, the right of self-defense was qualified as follows:

"But should you believe from the evidence beyond a reasonable doubt that defendant was willfully disturbing the peace at the home of Finley and was ordered by Finley to leave his home, and should you further believe from the evidence beyond a reasonable doubt that defendant refused to leave and kept up the disturbance, and should you further believe from the evidence beyond a reasonable doubt that Finley attempted to force defendant to do, and used no more force than appeared reasonably necessary to eject him, and should further believe from the evidence beyond a reasonable doubt defendant shot and killed said Finley in resisting said force, then you cannot acquit the defendant upon the grounds of self-defense as set out in this instruction; but, should you further believe defendant was attempting to

leave and was prevented from leaving by said Finley after he was ordered to leave, or in good faith abandoned the disturbance, then defendant had the right to rely upon the grounds of self-defense, although you should believe he had been disturbing the peace at Finley's home before being ordered to leave.''

The evidence conclusively shows that after the dispute at the house appellant had returned to the wagon and was in the road when the killing occurred. Finley had left the house and gone to the road, and, when the final difficulty arose in which he met his death, appellant was not in a place from which Finley had the right to eject him. The portion of the instruction quoted is predicated on what occurred at the house, but the evidence clearly shows appellant had abandoned the difficulty that had arisen at the house and at Finley's demand had left the place from which the latter had any right to eject him. There was no evidence to support an instruction qualifying the right of self-defense, and the instruction given was prejudicially erroneous. Estepp v. Commonwealth, 185 Ky. 156, 214 S. W. 891. On another trial if the evidence is substantially the same, that part of instruction No. 4 quoted above will be omitted.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.