## Gibson v. Commonwealth.

(Decided September 28, 1928.)

### Appeal from Harlan Circuit Court.

1. Homicide.—In prosecution for voluntary manslaughter, evidence held sufficient to support conviction.

2. Homicide.—In prosecution for voluntary manslaughter, exclusion of testimony of defendant, after he had been compelled to admit on cross-examination that subsequent to firing of pistol he had reloaded it with four cartridges, that after shooting of deceased he took part in another shooting affair, held not prejudicial; the overwhelming weight of proof established being that he fired three shots at deceased.

3. Homicide.—In prosecution for voluntary manslaughter, fact that court, when evidence introduced by commonwealth to prove certain of defendant's witnesses who were claimed to have been present at time of shooting in fact were not there, but were some distance away, and hence could not have seen it, did not admonish jury that such evidence was admissible only for the purpose of affecting the credibility of such witnesses, if it so did, held not prejudicial; it being necessary that witness must have knowledge.

4. Homicide.—In prosecution for voluntary manslaughter, fact that witness introduced by commonwealth to sustain character of deceased did not qualify held not prejudicial under the evidence.

5. Homicide.—Where defendant was convicted only for voluntary manslaughter and not for murder, failure of court to define words "sudden affray" used in instruction was not prejudicial.

6. Homicide.—In prosecution for voluntary manslaughter, instruction to effect that, however abusive language of one of combatants might have been, it would not justify an assault and battery upon the other or shooting and wounding of one by the other, but that an assault and battery may be opposed by same if party believed himself in real or apparent danger of death or other bodily harm at hands of the other, held not erroneous as modifying instruction on self-defense.

7. Criminal Law.—Instruction, in prosecution for voluntary manslaughter, to effect that abusive language of one of combatants would not justify assault or battery upon other, but that assault and battery could be opposed if committed, held not erroneous as failing to define terms "assault" and "battery," in view of other

instructions, specifically telling jury that defendant could shoot
or kill deceased if he had reasonable grounds to believe he was in
danger, where defendant did not undertake to defend killing on
ground of abusive language but solely on ground that he thought
life was in danger.

FORESTER & CARTER for appellant.

J. W. CAMMACK, Attorney General, and GEO H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant was convicted of the crime of voluntary manslaughter and sentenced to serve nine years in the penitentiary. From that judgment he prosecutes this appeal.

He relies upon three grounds for a reversal: First, that the verdict is flagrantly against the evidence; secondly, the admission of incompetent and the rejection of competent testimony; and, thirdly, error in instructions.

There is no merit in the first contention, as this case was peculiarly one for the jury. The record shows that the appellant and Gil Lewis, the deceased, were political antagonists in the town of Evarts in Harlan county. In the November, 1927, election, they were heads of rival tickets for the offices of trustees of the town. Prior to the election the appellant had published a campaign poster which had incensed Lewis very much. There is evidence tending to show that Lewis, before the election, had made many threats against the appellant on account of the publication of this poster. However, the appellant admits that none of these threats was ever communicated to him until after the homicide. The election in one of the precincts of Evarts was held in the schoolhouse. The hallway of the first floor was elevated a few steps above the street level. This hallway ran the entire length of the building. There was a doorway in the center of the building with a few steps leading up from the doorway to the hallway. At each end of the building the hallway ended in a few steps leading down to a door. The election booths were set up in the hallway, and the election officers were seated at a table located about the head of the steps which led up from the front door. Election day was a rainy one, and a good many people congregated in the hallway of the school to escape the downpour, although it is earnestly insisted by both sides in

this case with much foundation that some of those who testified in this case, and who said they were in the hallway at the time of the shooting, were not there. It seems admitted that Lewis had on a raincoat that morning, but there is a sharp dispute whether or not he carried in his right hand an umbrella. Both he and the appellant were in the hallway near one end of the building electioneering as the voters came in. Along towards noon the appellant, who was standing with his arms folded across his breast, was approached by Lewis, who said to the appellant, in substance, that if he (Lewis) were beaten that day he would take it in good spirit and would congratulate the appellant, but if the appellant were beaten he would not speak to Lewis for six months. The appellant denied that he would act in any such fashion and asserted that he would be as friendly in such event as Lewis would be if he were beaten. Thereupon Lewis brought up the campaign poster to which reference has been made, and told the appellant that the assertions therein contained were lies. The appellant warmly resented this charge. The lie was immediately passed between the parties and very abusive language used, but to what extent by the appellant and by Lewis is again in sharp dispute. The commonwealth proved that while this abusive language was going on, the appellant suddenly unfolded his arms and fired a pistol at Lewis, who then turned to run, and that while he was running the appellant fired at him twice again. Lewis ran to the other end of the hall, where he dropped dead. There was evidence on the part of the commonwealth to show that while the appellant was firing at Lewis the latter had in his right hand an umbrella. The appellant introduced evidence to prove that before he fired at Lewis the latter drew a pistol upon him and that he fired to save his own life. Appellant admits firing two shots, one of which he says he fired just as Lewis turned to run, but he denies that he fired any third shot. There is evidence tending to show that as Lewis turned to run he dropped a revolver, but it is admitted that no shots were fired by Lewis from this revolver. On the other hand there is some evidence to show that Lewis was not armed on this occasion, although the great weight of evidence is to the effect that a pistol dropped from him as stated. Whether this pistol dropped from his pocket, or while he was trying to get it out, or before or after the appellant was shooting at him, is

all in dispute. There was evidence pro and con on the condition of Lewis' sobriety that morning, and his reputation for peace and quiet was both attacked and sustained.

From this recitation of the salient disputed facts, it necessarily follows that it was for the jury to determine from the evidence what were the facts of the case, and their finding that the appellant killed Lewis under such circumstances as amounted to voluntary manslaughter has much evidence in the record to support it. This being true, we cannot disturb its verdict on the first ground urged by appellant for a reversal. Jamerson v. Commonwealth, 222 Ky. 70, 299 S. W. 1093.

So far as the admission and rejection of testimony is concerned, the first serious complaint of appellant is directed to the refusal of the court to permit him, after he had been compelled to admit on cross-examination that after firing his pistol he had reloaded it with four cartridges, to state that after the shooting of Lewis another shooting affair took place in which he was compelled again to fire his pistol. Without deciding whether this offered testimony was competent or not, we are of opinion that its exclusion was not prejudicial because the overwhelming weight of the proof established that he fired three shots at the deceased. Indeed, he admitted two shots. No one said that he fired four shots, so that the jury must have known that if he was compelled to put four loads into his gun it must have been used other than in this shooting affray. The next complaint is that when the commonwealth introduced evidence to prove that certain witnesses who had been introduced for the defense, and who had claimed to have been present at the time of the shooting, in fact were not there but were some distance away and hence could not have seen it, the court when this evidence was objected to did not admonish the jury to the effect that such evidence was admissible only for the purpose of affecting the credibility of such witnesses, if it so did, and that line of cases illustrated by Johnson v. Commonwealth, 170 Ky. 766, 186 S. W. 655, is cited to support this position. Without deciding whether the testimony offered by the commonwealth did not go to the competency of the appellant's witnesses, since to be competent a witness must have knowledge, see Wigmore on Evidence, sec. 650 et seq., and if they were not present at the time of the shooting, they could not have had first-hand knowledge of its details, about which

they testified, rather than to their credibility—for a discussion of the distinction, see Wigmore on Evidence, sec. 875 et seq.—and assuming that appellant be sound in his contention that the evidence did go to attack the credibility of his witnesses, it is well settled that the failure to give the admonition which appellant says should have been given will not warrant a reversal where such failure was not, on the whole record, prejudicial to the accused. McDaniel v. Commonwealth, 185 Ky. 608, 215 S. W. 544; Hayes v. Commonwealth, 171 Ky. 291, 188 S. W. 415; Roop v. Commonwealth, 201 Ky. 828, 258 S. W. 667; Moore v. Commonwealth, 219 Ky. 490, 293 S. W. 982. The jury could not have taken the commonwealth's testimony about these witnesses in any other light than in deciding whether any credit was to be given their testimony or not, and the admonition insisted upon by the appellant, if given, would not have brought this issue any more sharply to the jury's mind. The failure to give the admonition, even if it should have been given, was then not prejudicial, and hence will not, under the cited cases, warrant a reversal.

It is next contended that one witness introduced by the commonwealth to sustain the character of the deceased did not qualify for that purpose, and, while perhaps that is true, yet this was of such minor importance in this case that the reception of this evidence could not have prejudiced the appellant.

The last ground of the appellant for a reversal bears on the instructions. Instruction No. 1 was the usual instruction on murder; No. 2, on manslaughter; No. 3, on the degree of the offense, if any; No. 4, on self-defense; and No. 6 on reasonable doubt. We shall refer to No. 5 presently. So far as his complaint is directed against the first instruction, it may be ignored, as the appellant was not convicted under that instruction. As to the second instruction, he complains because the court did not define the expression "sudden affray" used therein, and the case of Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591, is relied upon. This Gillis case has been explained time and again by this court as not sustaining the contention of the appellant. Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22; Gurley v. Commonwealth, 218 Ky. 236, 291 S. W. 40; Blanks v. Commonwealth, 223 Ky. 484, 3 S. W. (2d) 1105. In all these cases, we specifically held that a failure to define this expression is not ground for reversal.

Instruction No. 5 reads thus:

"You are instructed that, however abusive may be the language of one of the combatants, it will not justify an assault or battery upon the other, or a shooting and wounding of one by the other, but an assault and battery may be opposed by same, and further that before either can take the life of the other, or do him other great bodily harm and be justified by the law, the one so doing must believe, and have reasonable grounds to believe, that at such time he himself is in real or apparent danger of death or some other great bodily harm, impending at the hands of the other."

Complaint is made of this instruction, first, on the ground that it modified the self-defense instruction, and, secondly, on the ground that the court failed to define the term "assault and battery" used therein. In the case of Gordon v. Commonwealth, 136 Ky. 508, 124 S. W. 806, where the facts were very similar to those involved in this case, we approved the giving of an instruction like the one here in question. As we are unable to distinguish that case from this one, and regard its conclusion as sound, it is conclusive of the appellant's contention on his first ground.

So far as the second ground is concerned, appellant in his evidence did not undertake to defend his killing of Lewis on the ground of any abusive language uttered by Lewis, but solely on the ground that he thought his life was in danger when Lewis, according to his theory, presented his pistol towards him. This defense of the appellant was so well presented to the jury for decision, not only by the fourth instruction, but also by the fifth instruction, that the failure to define the term "assault and battery" could not have been prejudicial. Further, the self-defense instruction, which was the standard one on this subject, specifically told the jury, in substance, that the appellant could shoot or kill the deceased if he believed and had reasonable grounds to believe that he was in danger of death or some other great bodily harm about to be inflicted on him by the deceased and if he, in the exercise of a reasonable judgment, believed it necessary to so shoot or kill the deceased in order to protect himself from such danger real or to him apparent. This adequately explained, so far as the appellant's defense in this case was concerned, the phrase in the fifth instruc-

tion that an "assault and battery may be opposed by same." We find no merit in this contention of the appellant.

No error appearing prejudicial to the substantial rights of the appellant, the judgment is affirmed.