## Maupin v. Commonwealth.
(Decided Feb. 9, 1937.)

JNO. D. ATKINSON, HAFFORD E. HAY and JAS. M. WOLFIN-BARGER for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Armour Maupin was tried under an indictment charging him with the crime of murder, and was convicted of manslaughter and his punishment fixed at confinement in the penitentiary for a term of seven years. He insists that the judgment should be reserved because (1) the instruction on self-defense is erroneous; and (2) the trial court erred in failing to admonish the jury as to the effect to be given to certain impeaching testimony.

Appellant shot and killed Mack Jordan in Clay City on the night of December 24, 1935. About two weeks before the homicide, the appellant and deceased had a quarrel which culminated in a fight. On the night of the homicide, the deceased and a number of other persons were in James Bloom's restaurant in Clay City when appellant entered about 10 o'clock. He had been drinking, and apparently was in a festive mood. He began singing and Louise Bloom, one of the proprietors of the restaurant, asked him to stop. He then shook hands with every one present, including the deceased, and a few minutes later he and the deceased walked into the kitchen, ostensibly for the purpose of taking a drink of liquor. James Bloom objected, and requested them to leave. They returned to the front room, where a large crowd had gathered, and then walked out of the building together. Appellant and one or two witnesses introduced by him testified that the deceased requested the appellant to go out with him, but a number of witnesses for the commonwealth testified that appellant suggested to the deceased that

they go outside and talk. As soon as they reached the outside of the building, they began quarreling, and, according to a majority of the witnesses, the quarrel continued for at least thirty minutes before the shooting occurred. Five shots were fired, and the deceased was struck four times. Two of the bullets passed through his body, one through his arm, and one through his leg. After stating what occurred in the restaurant, the appellant testified as follows:

"I turned around and went out and he held me on this side, and we come out to the corner of the building, possibly twelve feet from it, and he commenced talking about fighting and what he had done for me up there at Roscoe Meadows' store and he could do it again, and what a 'G—— d—— s—— of a B——' he was. And he said if I wanted to fight he would cut it out with me. I am ruptured, and I pull my pants up that way [indicating] and he asked me did I have a gun. I says, 'No, I am just pulling my pants up,' and he just grabbed me and took hold of me here and hurt me and grabbed me up on my toes, and jerked me up this way [indicating], and jerked my clothes plumb up around my neck, and after he done that he took hold of my collar and pulled me around by the brick wall and held me there. I told him to let me loose, and I says, 'Let me loose, I want to go and see about my fire,' and he let me loose. He was cussing and going on all the time, and about the time he turned me loose Eldon Hatton come around the corner and he [Jordan] come out with that pistol just as quick as lightning, and hit at me and when he hit I would grab it and knock it around, and this other fellow come out and I just went to shooting. He just shoved me right down. There was snow on the ground and when we went down on the ground he warped me over the head, this fellow Hatton did, and I says, 'I thought you was my friend,' and this fellow Jordan says, 'Hit him again,' and I was knocked almost senseless, and I grabbed him as soon as I could."

He was then asked why he shot Jordan, and he answered:

"My best judgment is, the way it looked to

me, that it was just a frame-up to kill me. I thought it was necessary to protect myself, for I thought they would kill me, for he told a fellow what he was going to do for me. He told Rube Curtis what he was going to do to me.''

The jury were instructed to acquit the appellant if they believed from the evidence that at the time he shot Jordan he believed, and had reasonable grounds to believe, that he was then and there in danger of death or the infliction of some great bodily harm at the hands of Jordan and that it was necessary, or was believed by the appellant in the exercise of a reasonable judgment to be necessary, to shoot the deceased in order to avert the danger, real, or to the appellant, apparent. It is insisted that the foregoing testimony of the appellant showed that the deceased and Eldon Hatton were acting in concert, and were assaulting the appellant when the shots were fired, and therefore he was entitled to a self-defense instruction as to Eldon Hatton, and that the jury should have been instructed to acquit him on the ground of self-defense if they believed from the evidence that at the time he shot the deceased he believed, and had reasonable grounds to believe, that he was then and there in danger of death or the infliction of some great bodily harm at the hands of either Mack Jordan or Eldon Hatton. A careful analysis of the evidence fails to show that Hatton took any part in the difficulty before the shooting occurred, or was present aiding or assisting the deceased. Hatton testified that he came out of the restaurant and saw appellant and Jordan scuffling. Each had hold of the other, and appellant was shooting at the deceased. Hatton was then 20 or 25 feet from the scene of the struggle. He ran up, seized a club, and struck appellant on the head, knocking him down. Appellant's testimony is in substantial agreement with Hatton's. He admitted that Hatton did not strike him until after he had shot Jordan, and he then said to Hatton, ''I thought you was my friend,'' indicating that at the time of the shooting he did not believe Hatton was acting in concert with the deceased. There is no evidence tending to show that appellant believed, or had reasonable grounds to believe, that he was in any danger of injury at the hands of Hatton, and the latter's name was properly omitted from the self-defense instruction. Mullett

v. Com. 233 Ky. 785, 26 S. W. (2d) 46; Howard v. Com., 230 Ky. 738, 20 S. W. 748.

After the appellant testified in his own behalf, the commonwealth introduced five witnesses in rebuttal, who testified that his reputation as to truth and morality was bad. At the conclusion of the testimony of each of these witnesses except one, the court properly admonished the jury as to its purpose and effect. The court failed to admonish the jury at the conclusion of the testimony of one witness, W. E. Armour, but no objection was made to his testimony, and the court was not requested to admonish the jury as to its purpose and effect. The appellant introduced a few witnesses who testified that his reputation was good, and the commonwealth again introduced four character witnesses, three of whom were the same witnesses who had testified on the same subject in rebuttal. One of the witnesses stated that he knew nothing concerning appellant's reputation as to truth and morality. No objection was made to the introduction of these witnesses, but, at the conclusion of their testimony, the defendant requested the court to admonish the jury as to the purpose and effect of their testimony, and the court refused to give such an admonishment, and it is insisted that this was error. The court, no doubt, overruled the defendant's motion on the theory that the testimony of the witnesses was the same as their testimony in rebuttal, when the jury was admonished as to the purpose and effect of their testimony, and that further admonishment was unnecessary. The court's failure to admonish the jury again when requested so to do was technically erroneous, but, under the circumstances, we do not think it was prejudicial. The court had repeatedly admonished the jury as to the purpose and effect of similar testimony, and the jury necessarily understood the purpose of the impeaching evidence. A careful consideration of the entire record convinces us that the error complained of was not prejudicial to the substantial rights of the appellant. Roop v. Com., 201 Ky. 828, 258 S. W. 667; Turner v. Com., 185 Ky. 382, 215 S. W. 76. In Hayes v. Com., 171 Ky. 291, 188 S. W. 415, 419, the court, speaking of the duty of the trial court to admonish the jury that the purpose of such evidence is only to affect, if it does affect, the credibility of the defendant as a witness, said:

"But the failure of the court to so limit the effect of the evidence by an admonition will not be reversible error unless by an exception or objection or motion made at the time the attention of the court is called to the necessity for so admonishing the jury, and the failure even then to so admonish the jury will not be reversible error unless it appears from the whole record that the substantial rights of the accused were prejudiced by the failure to limit the effect of the impeaching evidence."

Upon the whole case, we think the jury was extremely lenient, and it is apparent that the minor errors which may have occurred during the trial had no effect on the verdict.

The judgment is affirmed.