## General Refractories Company v. Morrison.

(Decided January 15, 1926.)

### Appeal from Carter Circuit Court.

1. Exceptions, Bill of—Not Stricken Because Not Signed by Circuit Judge who Tried the Case, Due to Rearrangement and Creation of New Circuit.—Bill of exceptions, signed pursuant to Acts 1920, c. 118, section 1, amending Civil Code of Practice, section 334, will not be stricken because not signed by circuit judge who tried case, due to a rearrangement and creation of a new circuit.

2. Boundaries—Courses and Distances Must Give Way to Known and Established Monuments.—Courses and distances by which property is identified must give way to known and established monuments or natural objects.

3. Boundaries—Evidence Held to Establish Line as Contended for by Defendant.—In boundary dispute between adjoining landowners, evidence held to establish boundary line as contended for by defendant.

4. Champerty and Maintenance—Purchase of Property by Plaintiff Not Shown to be Champertous—Purchase of property by plaintiff held not shown to be champertous, where vendor was then in possession of disputed strip with a hog pen, and it did not appear that plaintiff knew that vendor's possession of property was other than as a matter of right.

THEOBALD & THEOBALD for appellant.

WAUGH & HOWERTON for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

· By deed dated April 1, 1910, L. N. Beall and wife conveyed a certain tract of land lying on the waters of Little fork in Carter county, Kentucky, to S. L. Bays. He in turn conveyed a portion of this property in 1918 to Chas. T. Rice, who conveyed the same by deed dated October 25, 1920, to the appellee, Wm. H. Morrison. By deed dated June 24, 1911, L. N. Beall and wife conveyed to the Olive Hill Fire Brick Company of Maine a tract of land which, in part, adjoined the tract he had theretofore conveyed to S. L. Bays. By mesne conveyances, this property has come into the ownership of the appellant, General Refractories Company. This case involves the correct location of the western line of appellee's property, which is a part of the eastern line of appellant's property. It is the contention of appellant that this line runs along the top of a bank or bluff, and that of the appellee that it runs along the foot of this bank or bluff. The deeds of Bays to Rice and Rice to appellee, in so far as material to this controversy, describe appellee's property thus:

"Beginning at a beech standing between the railroad, C. & O., and the Little fork, then N. 18 W. 12 poles to a large water elm at the edge of the water, then crossing the said railroad N. 60 E. 10 poles to a stake, N. 46½ E. 13½ poles to a poplar, N. 50 E. 12 poles, N. 62 E. 8 poles to an ash, then to the northeast corner of the James Savage lot."

The deed of Beall to Bays has its beginning corner at a set stone in Boggs' line near a road and small drain. The calls in that deed then are:

"(1) Thence N. 81 W. 43 poles to a black oak marked; (2) S. 87 W. 35 poles; (3) S. 67 W. 38 poles; (4) S. 88 W. 71 poles to a beech standing between the railroad and Little fork; (5) N. 18 W. 12 poles to a large water elm at the edge of the water; (6) thence crossing the railroad N. 60 E. 10 poles to a stake; (7) N. 46½ E. 13 3/5 poles to a poplar; (8) N. 50 E. 12 poles; (9) N. 62 E. 8 poles to an ash; (10) N. 62½ E. 12 3/5 poles to an elm; (11) N. 82½ E. 46½ poles to a sycamore; (12) S. 85 E. 26 poles to a willow; (13) S. 76½ E. 71 poles to a small sycamore in old road; (14) thence S. 3½ W. 18 poles to the beginning."

The sixth to thirteenth calls, inclusive, of the deed of Beall to the Olive Hill Fire Brick Company with slight discrepancies in distance, they being measured in feet, whereas the Bays deed is measured in poles, when reversed, coincide with the sixth to the fourteenth calls, inclusive, of the Bays deed above mentioned, and the fifth to the ninth calls, inclusive, of this last deed coincide with the first five calls of the Morrison deed. The correct location of these first five calls of Morrison's deed solves the present litigation. The correct location of these five calls depends on the location of the beech mentioned as the beginning point in the Morrison deed and the ending point of the fourth call in the Bays deed. The evidence shows that there are two beeches between the C. & O. and Little fork of the Sandy river standing about 65 feet apart, the most westerly of which is known in this record as the stubby beech, and which we shall call such in this opinion to distinguish it from the other beech, which we shall simply designate herein "the beech." Both of these beech trees are marked. It may also be said that the willow tree, the sycamore tree, the elm tree and the ash tree, now an ash stump, at the end of the twelfth, eleventh, tenth and ninth calls, respectively, of the Bays deed, are all still standing, have been for many years marked trees; are well known in the community; and are conceded to be corner trees and the ones called for by these deeds.

After Morrison acquired title to his property in 1918 he undertook to erect a fence along the line he claims to be the division line at the foot of the bluff. Thereupon the appellant brought a forcible entry proceeding against him in the Carter county court. It is conceded in this record that by agreement one J. B. Prichard, a surveyor of that county, was appointed to locate this line, and the parties agreed to be bound by his survey. He made a report to the Carter county court in which he stated that the property here in controversy belonged to the appellant and not the appellee, and judgment was entered in accordance with that report. However, in this case Prichard says that he made two surveys at that time, one of which located the line as now claimed by appellant and the other of which located it as now claimed by appellee, and that he does not know how he came to make the report he did in the county court. The parties are not insisting in this litigation on the binding effect of Prichard's report in the county court or of the judgment

of that court. After this judgment had been entered in the county court, the appellant erected a fence along the line it claims as the division line, whereupon appellee brought this suit in ejectment in order to have the line established as he claims it to be. A trial before a jury resulted in a verdict in his favor, and from that verdict this appeal is prosecuted.

Appellee has made a motion in this court to strike the bill of exceptions from the record. This case was tried before the Honorable Henry L. Woods. then circuit judge of the circuit of which Carter county was then a part. Due to a rearrangement of this circuit and the creation of a new circuit by the legislature, Carter county was transferred to the new circuit thus created. When the bill of exceptions in this case was presented for approval and signature, the Honorable Leonidas Redwine was then the circuit judge of the Carter circuit court, and he as such signed the bill. It is now claimed by appellee that as the circuit judge who tried this case was no longer the circuit judge of the Carter circuit court when the bill of exceptions was signed, it devolved upon appellant to make up a bystanders' bill of exceptions. Although this was the rule prior to the passage of chapter 118 of the Acts of 1920, amending section 334 of the Civil Code, it is no longer. As the bill of exceptions in this case was signed pursuant to this amendment to the Civil Code, the motion to strike the bill must be and it is hereby overruled.

After the petition in this case had been filed in the lower court under an agreed order entered therein, Prichard was again appointed to make a survey of appellant's and appellee's properties and to locate the line in question. This he did. In his report to the court, he said that in order to make his survey coincide with and hit the marked corners called for in the Bays deed one pole had to be added to the first call in Morrison's deed (the fifth call in Bays' deed). On his examination in court, when produced by appellee on the trial of this case, he testified that in order to properly locate Morrison's line, he had run out the lines of the old Bays deed; that in so doing he had on the first call thereof hit the marked black oak mentioned therein; that he fell a little short on the third call, and that when he came out at the end of the fourth call he missed "the beech" tree about ten or twelve feet. Ascertaining at this point the variation of the needle he then proceeded to run the next calls of the Bays deed. He

missed the elm tree at the end of the tenth call some three or four feet, and using the bearing of N. 33¼ E. for his next call he missed the sycamore tree by one pole. He then moved over to the sycamore tree. Reversing his calls, he then ran out to the stubby beech at the end of the fourth call of Bays' deed and the beginning point of Morrison's deed; whereupon he concluded that the stubby beech was the correct location of the beginning corner of Morrison's deed. Adopting the stubby beech as the beginning corner and following the first five calls of Morrison's deed (the fifth to ninth calls, inclusive, of Bays' deed), he located the disputed line at the foot of the bluff as claimed by Morrison. However, it is overwhelmingly shown in this evidence that if this stubby beech be used as the beginning point and the calls of the Bays deed are then followed out, every known corner, such as the ash, the elm, the sycamore and the willow, will be missed in running the lines. That these known and marked corners were meant to be the corners of both the Bays and Olive Hill Fire Brick Company's surveys can hardly be questioned. They are mentioned in both the Bays deed and that of the Olive Hill Fire Brick Company, the surveys of which were made by one Moberley, now dead. The witnesses who testify in this case all say that these trees were marked and well known corner trees and considered as such in that community. Further, by beginning at the stubby beech and running the first call of N. 18 W. 12 poles, we come to no water elm, although we do reach two or three small elm trees about six inches in diameter. In this connection it must be remembered that Prichard's first report to the court fixed the beginning point at "the beech" tree, and undertook to correct the error he had made when he missed the sycamore tree by adding to the first call one pole, making it thirteen poles. Little credence can be given to the testimony of Prichard, as he has made so many different surveys in this case and has changed his mind some three or four times about where the disputed line should be located.

On the other hand, it is most satisfactorily established by unimpeached evidence of competent surveyors who have no interest in this case, that by taking a large beech referred to in the fourth call of the deed of Beall to the Olive Hill Fire Brick Company (which beech tree is not to be confused with any of the beech trees hereinbefore mentioned), which fourth call does not abut upon or adjoin any of the property covered by the Bays deed, and

using this beech tree whose location or identity as the corner tree of this call is not disputed, by intersecting the lines the beginning point of the Bays deed may be and was exactly located. This beginning point being thus established and the lines run out as literally- called for in the Bays deed, with the exception of using between the elm tree and the sycamore tree in the eleventh call a bearing of N. 82¼ E. instead of N. 82½ E., as called for by that deed or N. 83¼ E., as used by Prichard, all of the known and called for corners, such as the poplar, the ash, the elm, the sycamore and the willow trees were hit. In doing this, the beech tree which is the end of the fourth call in the Bays deed and the beginning of the first call in the Morrison deed was found to be "the beech" tree and not the stubby beech. Taking "the beech" tree as the beginning point and running N. 18 W. 12 poles as called for by the first call of Morrison's deed and by the fifth call of Bays' deed, the surveyors ran square into a large water birch tree, which may have been mistaken by those who made the original Bays survey for an elm tree. Of course it is elementary law, subject to certain exceptions not here involved, that courses and distances must give way to known and established monuments or natural objects, such as the ash, elm, and sycamore trees mentioned in all of these deeds. Kentucky River Coal & Timber Co. v. Morgan, 210 Ky. 113, 275 S. W. 12. Therefore, if by varying one call by only one-fourth of a degree we can make the line run from the ash to the sycamore tree as called for by all deeds, and can make the survey as called for by such deed not only close but hit all known and called for monuments, it is our imperative duty to so change such call as to bring about such result. Thus it is clear that the evidence overwhelmingly establishes that "the beech" tree and not the stubby beech tree is the correct starting point of Morrison's lines.

It is true that a number of witnesses say that the stubby beech has always been regarded as a corner tree, but they also admit that the other beech tree has also been so regarded. Some of them say that the stubby beech has been considered for a number of years as the beginning point called for by Morrison's deed, but their testimony cannot outweigh the physical facts established by the surveys in this case. Thus the proof is clear that the disputed line should have been located as contended for by appellant, and the verdict of the jury to the contrary is flagrantly against the evidence.

Appellant also contends that the court erred in giving the instruction it did on a question of champerty raised by its pleadings. As we read the record, no question of champerty was presented under the evidence. At the time Rice conveyed the property in question to Morrison, it is admitted that Rice was in the possession of the disputed strip with a hog pen. Appellant contends, though, that Rice, who was then working for it, had possession of this disputed strip simply by its tacit permission and as its employe. On the other hand, Rice says he was in possession of it because he claimed it as his own. There is nothing to show that Morrison knew that Rice's possession of this hog lot was other than as a matter of right.

In Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S. W. 513, we said:

"By section 210, Kentucky Statutes, all sales and conveyances of land in the adverse possession of another are void. But adverse possession under this statute is not the same as under the statute of limitation. It must be acual; possession by construction of law is insufficient.

" 'The champerty statute is a highly penal one in its effect. Before its severe penalty of forfeiture of title should be put into operation in a given case, the party to be subjected to it should have had a fair opportunity for knowing that he was conveying lands then held and claimed adversely by another. And this adverse possession must be at the time of the hostile conveyance. Generally, the statute is invoked in aid of one in possession under an inferior title; for one with the superior title can safely rely on his title alone in such case. A previous occupancy or claim, however notorious and sufficient, will not, therefore, avail one pleading the statute. It must be such actual adverse occupancy, contemporaneous with the deed sought to be evaded by it, as would have brought to the notice of an inquirer or intending purchaser the fact of the occupier's hostile claim.' Mayes v. Kenton, 64 S. W. 728, 23 Ky. Law Rep. 1052.

"To the same effect see Interstate Investment Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Krauth v. Hahn, 139 Ky. 612, 65 S. W. 18; Brown v. White, 153 Ky. 452, 156 S. W. 96; Le Moyne v. Litton, 159 Ky. 655, 167 S. W. 912."

In the light of the foregoing, it is obvious that appellant did not sustain its plea of champerty and the court should not have submitted that issue to the jury at all.

Before closing this opinion, we wish to call the bar's attention to a matter in which we bespeak its co-operation. When maps or diagrams are used on a trial, the lawyers should remember that an examination which is perfectly plain to them, the witness, the jury and the court, may be perfectly meaningless to us on appeal. Unless the record identifies what portion of the map or diagram to which the witness is referring, his testimony sounds like so much Choctow to us. Illustrative of this is a part of the testimony in this case given by a surveyor whose evidence we were very anxious to follow and understand. It reads:

"Q. Now, when you left this tree and run the calls of the deed would you hit this willow exactly? A. Yes, sir.

"Q. Didn't you run up here and miss this corner here (indicating) and come down here? A. It missed it here and we measured it back here and hit it exactly here, the courses and distances, and came around here and back here (indicating).

"Q. Would it close when you got back here? A. No, it would leave a loophole here."

This examination is like that mentioned in Royal Collieries Co. v. Wells, 210 Ky. 600, 276 S. W. 515. The use of a figure or letter to designate what part of the map about which the witness is talking would obviate this difficulty.

For the reason, then, that the verdict in this case is flagrantly against the evidence, the judgment of the lower court is reversed, with instructions to grant appellant a new trial herein.