## Gurley v. Commonwealth.

(Decided February 11, 1927.)

### Appeal from Harlan Circuit Court.

1. Criminal Law—Failure of Instruction on Voluntary Manslaughter to Define "Affray" Held Harmless, in View of Conviction.—In prosecution for murder, failure to define word "affray" in charg-

ing on voluntary manslaughter held harmless, in view of conviction of voluntary manslaughter.

2. Homicide—Failure to Instruct on Self-Defense Held Not Error Under Evidence.—In homicide prosecution, in which the overwhelming weight of the evidence tended to show that defendant deliberately shot deceased without provocation, failure to instruct on self-defense held not error.

CHARLES B. SPICER for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Virgil Gurley, was indicted in the Harlan circuit court charged with murder, and on his trial was found guilty of voluntary manslaughter and his punishment fixed at confinement in the state penitentiary for 18 years.

The facts, as shown by the proof for the commonwealth, briefly stated, are these: The deceased, Frank Monhollen, was in a pool room in which were congregated 50 to 75 persons. He was standing near a stove about the center of the room engaged in conversation with George Johnson. Appellant came into the room with his hand on a pistol in his right overcoat pocket. He walked to where the deceased was standing when the following conversation, as detailed by Johnson, occurred between them:

"Well, me and Monhollen was standing there in the pool room at Black Mountain and Virgil Gurley walked in. We was standing there. He walked to my left side and Frank Monhollen says: 'What you got your hand?' Virgil says: 'I've got it on my gat.' About that time Frank pulled his coat back and says 'That beats me, I haven't got none.' Virgil says: 'I don't want you to have any.' Then Frank said to Virgil: 'You may have to pay for that.' Virgil says 'You are a fool,' and about that time the shooting commenced. Monhollen fell."

Johnson further testified that, immediately after firing at the deceased, appellant wheeled and began firing at Corb Farley, who was standing about 15 feet away. He fired six shots and Corb Farley was wounded twice and

his brother, Bill Farley, three times. Johnson was corroborated by a number of witnesses who were standing near when the shooting began.

Appellant admitted that the conversation occurred as detailed by Johnson except he denied that he called the deceased a fool. He denied shooting at deceased, but claimed at the conclusion of the conversation with him, he looked around and saw Corb Farley in the act of drawing his gun; that he believed he was in danger of being killed or suffering great bodily harm at the hands of Farley and he drew his gun and began firing at Farley. He claims that he did not shoot at the deceased and if he did shoot him he did so accidentally while shooting at Farley in what he believed to be his necessary self-defense. It seems that Corb Farley had killed a brother of appellant about a year previous to this occurrence, and appellant claims that Farley had made threats against his life and that these threats had been communicated to him. He also claimed that he and the deceased were good friends.

The commonwealth introduced two witnesses who testified that a short time before the deceased came into the pool room he and appellant had a conversation which indicated they were not on friendly terms. It further appears that appellant had seen the deceased in company with Corb Farley during the afternoon before the killing occurred.

The only grounds relied on for reversal are: (1) Failure of the trial court to define the word "affray" as used in the instruction on voluntary manslaughter, and, (2) failure of the court to instruct the jury that if appellant was acting in self-defense against Corb Farley and shot at and missed Farley and accidentally shot deceased, he was entitled to an acquittal.

Appellant insists that the failure of the court to define the word "affray" was prejudicial error, and he relies on the case of Gillis v. Commonwealth, 202 Ky. 827, 261 S. W. 591. In the Gillis case the defendant was found guilty of murder. It appears that there were a number of errors, and in reversing the case this court directed that on another trial the word "affray" should be defined. The Gillis case was explained in Fletcher v.

Commonwealth, 210 Ky. 71, 275 S. W. 22, wherein we said:

> "The court in instructing the jury did not define *sudden affray*, and this is complained of on the authority of Gillis v. Commonwealth, 202 Ky. 827. As the words are a legal term and their legal meaning may not be apprehended by a jury it is proper that the words should be defined. The court has never held that a failure to define them is ground for reversal. The defendant here was not prejudiced by this; he was only found guilty of voluntary manslaughter."

In the instant case the appellant received the benefit of the instruction on voluntary manslaughter and he was not prejudiced by the failure of the court to define the word "affray." Appellant's second ground for reversal would be well taken provided there had been any proof to authorize such an instruction. Counsel for appellant, in his brief, attempts to show that deceased was standing between appellant and Corb Farley when the shooting commenced and was in the line of fire, but appellant in his testimony stated that the deceased was standing behind him when the shooting occurred. The appellant, therefore, was not entitled to the instruction which he insists should have been given. The overwhelming weight of the evidence tends to show that appellant deliberately shot deceased without provocation, and the punishment fixed by the jury was less severe than he reasonably could have expected.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment it affirmed.