## Blanks v. Commonwealth.

Decided March 9, 1928.)

Appeal from Muhlenberg Circuit Court.

1. Criminal Law.—One accused of homicide may make admissions in two ways: either by his own declarations, or by failing to deny what others testify against him.

2. Homicide.—Where evidence showed that defendant stopped deceased on his way to work, brought on difficulty, and killed him, verdict of guilty of manslaughter held not against law and evidence.

3. Criminal Law.—In prosecution for homicide, it was not prejudicial to instruct jury to find defendant guilty of voluntary manslaughter if killing was done not maliciously, but in sudden affray, without defining "affray."

4. Homicide.—In prosecution for homicide, instruction to acquit for self-defense if at time "defendant shot said Liberty Holt he believed," etc., held not erroneous for failure to insert "the de-

fendant Blanks" between "he" and "believed," though insertion of such words would have made instruction better.

5. Homicide.—In prosecution for homicide, instruction on self-defense requiring defendant to believe it necessary to shoot the deceased to avert danger of death or great bodily harm to himself held not erroneous because of omission of words "and wound or kill" after word "shoot" and before "the deceased."

6. Criminal Law.—In prosecution for homicide, instruction as to reasonable doubt held not erroneous for omission of words "from the evidence" following words "reasonable doubt," especially where instruction follows language of Code very closely, since it is best to give such instruction in language of Code itself.

7. Homicide.—Conviction of manslaughter with punishment at 21 years in penitentiary held not result of passion or prejudice, where defendant, knowing deceased entertained malice for him and had threatened him, halted deceased as he passed on way to work, declared intention to settle trouble, and killed him.

8. Criminal Law.—In prosecution for homicide, judgment of conviction will not be reversed because jury believed one set of witnesses rather than another, notwithstanding that there were many contradictions in evidence, and that commonwealth's witnesses were relatives or intimate friends of deceased.

WILKINS & SPARKS for appellant.

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On April 25, 1925, the defendant, Andy Blanks, slew Liberty Holt. Under an indictment charging him with murder, he was tried on April 23, 1926, found guilty of manslaughter, and sentenced to 7 years in the penitentiary. The trial court gave him a new trial because of newly discovered evidence. He was tried again on January 17, 1927, was again found guilty of manslaughter, and his punishment was fixed at 21 years in the penitentiary. He filed six grounds with his motion for a new trial, but the court overruled it, and he has appealed.

A man may make admissions in two ways: First, by his own declarations; second, by failing to deny what others testify against him. According to the admissions of the defendant, this killing occurred under these circumstances:

There was bad blood between the defendant and the deceased. The deceased had made many threats against the defendant that had been communicated to him, and

for some time this tragedy had been impending. The evening before the homicide Holt came to Blanks' home with a pistol, but Blanks was not at home. The defendant made no effort to avert the tragedy, but armed himself to engage in it. The defendant and deceased lived near each other, the distance from one house to the other is not definitely shown, but there is evidence that they were about 50 feet apart, a little roadway running between them. The defendant says that on the morning of the tragedy he saw the deceased eating his breakfast, and after he had eaten his breakfast he saw him leave his home. He says that as Holt left he saw him put a pistol in his pocket. The defendant says that at that time he was changing his clothing and had not finished putting on his work clothes. He still had on his house slippers. He picked up a double-barreled shotgun, rushed out, and resting it on the fence, and pointing it at Holt, said: "Hey, Liberty, you have been trying to cause trouble ever since I have been here. I am ready to settle it this morning." The deceased stopped. They were about 17 feet apart, and Holt replied, "You are here this morning, are you?" The defendant said, "Why is it you want to come to my house with a gun? Why don't you act like a man?" The deceased said, "I came to see you about that dog." About that time Mrs. Holt came out and said, "Mr. Blanks, don't do anything; don't shoot," or something like that. The defendant told her to go back in the house; that he was not going to shoot unless forced to. Mrs. Holt then said, "Come on Liberty, come back in the house." The deceased said to her, "You go on, and shut your mouth." The defendant said, "You have called me a scab and run over and mistreated me ever since I have been here." The deceased said: "I beg your pardon, for I told Mr. Allen a few days ago as far as I knew, you were a friend of mine. I was aiming to come on and lay the gun down and talk to you like a man, if you had been in." The defendant replied: "That will do for you to tell, but it won't do for me to believe. You talk too damn much anyhow. You have slurred me and my family and you *drug* my dog off in the hollow and knocked him in the head. You called me a scab and you are standing there with a pistol in your pocket." Deceased said, "I beg your pardon, my pistol is in the house in the tray of my trunk." Defendant told deceased to keep his hand away from his

gun. Deceased said, "There ain't nothing to you any-how." To which defendant replied, "No, there ain't much to you." According to the witnesses for the commonwealth, the deceased raised both hands, and said: "I am trying to live a Christian life, and to do right, and, of course, you are there now standing with a double-barreled shotgun. You can blow my heart out, but if you do I want to tell you now, I am ready to meet my Jesus." Defendant replied, "If you are not, you ought to be, rather than running around mistreating me and trying to make trouble with me." The defendant again told Holt to take his hand off his gun. Defendant said Holt was trying to put his hand in his pocket to get his pistol. Defendant fired and Holt fell dead. A pistol was found on Holt's body. The defendant says he did not hear Holt's statement about living a Christian life, but practically the same statement was established by witnesses for the defendant.

The alleged error set out in his first ground for new trial is that the verdict is against the law and evidence. His second is similar, but we find no merit in these contentions, for certainly, if the jury believed the evidence for the commonwealth, the verdict is fully supported and defendant has escaped with a very light punishment. In fact, his own admissions are enough to sustain the verdict. He was in his home in a place of safety. The deceased was on his way to work. Defendant picked up his shotgun, rushed out, hailed deceased, and brought on the difficulty. The deceased was armed, but the defendant had the drop on him and kept it. This case cannot be distinguished from the case of Duke v. Commonwealth, 191 Ky. 138, 229 S. W. 122. There is no merit in the first two grounds.

His next complaint is of the instructions. The court in the first instruction directed the jury to find the defendant guilty of murder if they believed this shooting was done with malice aforethought, and guilty of voluntary manslaughter if it was not done maliciously, but in a sudden affray, etc. The court did not define "affray." Relying upon the case of Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591, defendant contends this was error, but we are unable to agree with him. The case of Gurley v. Commonwealth, 218 Ky. 236, 291 S. W. 40, is a complete answer to his contention. He complains of instructions 3 and 4 and says that they are prejudicial

because of the omission from them of certain words which we have inserted in them in italics:

No. 3. If the jury shall believe from the evidence that at the time the defendant shot said Liberty Holt, he, *the defendant Blanks,* believed, and had reasonable grounds to believe, that he was then and there in danger of death, or the infliction of some great bodily harm at the hands of said Liberty Holt, and that it was necessary, or was believed by the defendant in the exercise of a reasonable judgment to be necessary, to shoot *and wound or kill* the deceased, in order to avert that danger, real or to the defendant apparent, then you will acquit the defendant on the grounds of self-defense or apparent necessity.

No. 4. If upon the whole case you have a reasonable doubt *from the evidence* of the defendant having been proven guilty, you will find him not guilty; or if you find him guilty, but on all the evidence have a reasonable doubt as to whether he has been proven guilty of willful murder or of voluntary manslaughter, you will find him guilty of the lower offense, voluntary manslaughter.

Citing the case of Reynolds v. Commonwealth, 183 Ky. 375, 209 S. W. 346, he contends that the omission of the words "the defendant Blanks" rendered this instruction No. 3 confusing, and therefore erroneous. It is true that in the Reynolds case we prepared an instruction which contained the words, "the defendant Reynolds" at the point where this defendant contends the words "the defendant Blanks" should be inserted, and we are willing to admit that the insertion of the words "the defendant Blanks" would have made this instruction better, but the omission of these words did not render this instruction erroneous. The Reynolds case was reversed, but it was reversed because the self-defense instruction required the jury in order to acquit Reynolds on the grounds of self-defense to believe "beyond a reasonable doubt" the truth of the facts upon which Reynolds' right to self-defense was predicated.

Citing this Reynolds case again, and citing the case of Barker v. Commonwealth, 159 Ky. 309, 166 S. W. 981, Blanks contends that the omission of the words "and wound or kill" at the point where we have inserted them in this instruction was erroneous, but we are not able to agree with him. Neither the Reynolds case nor the Barker case was reversed for failure to use the word "kill." The essential elements of an instruction on self-

defense are that the jury shall be told that the defendant should be acquitted if at the time of the homicide he believed, and had reasonable grounds to believe, that he was then and there in danger of death or some great bodily harm, and that the defendant believed it was necessary, in order to avert that real or apparent danger, to do certain things. In this case, all that this instruction required the defendant to believe in order to be entitled to an acquittal was that it was necessary to shoot the deceased. He may have believed it was merely necessary to shoot him in the arm, and yet, if in an endeavor to shoot him in the arm, he had killed him, he would be just as much entitled to an acquittal under the law and instruction given, as he would have been if he had believed it was necessary to shoot him in the heart. The addition of the words "and wound or kill' only adds to the things it is necessary for the defendant to believe in order to justify his actions. Those words are unnecessary, and the instruction without them was not erroneous.

Coming now to the fourth instruction, he contends that the omission from this instruction of the words "from the evidence" renders this instruction erroneous, and he relies on the case of Commonwealth v. Stites, 190 Ky. 407, 227 S. W. 574. A similar contention was before this court in the case of Ragsdale v. Commonwealth, 195 Ky. 750, 243 S. W. 1056, and we refused to reverse the judgment. All the defendant was entitled to was to have the jury told that he was entitled to an acquittal if the jury entertained a reasonable doubt of his having been proven guilty, and we have written over and over again that it is best to give this instruction in the language of the Code itself, and the instruction given follows that language very closely. So we find no merit in his third ground.

His fourth ground for reversal is that the court erred in the admission and rejection of evidence. This is a rather large record, but we have gone through it carefully and we have failed to find even one instance where evidence objected to by the defendant was admitted. In examining this record we have been impressed by the skill and ability with which this trial was conducted and by the fairness of the court's rulings. It is a rare thing that we get a record where the trial is as free from criticism as this one. The attorneys were very careful and the court was studiously fair. There was but one ruling that was the least bit doubtful, and the court

gave the defendant the benefit of that doubt. There is absolutely nothing in his fourth ground.

His fifth and sixth grounds practically amount to the same thing. That is that the verdict appears to have been returned under the influence of passion and prejudice. We cannot find in all this record one bit of justification for these grounds. The defendant knew that the deceased entertained malice for him, and he had threatened to do him harm. Instead of asking the authorities for protection, he took the matter in his own hands. He took his shotgun, and in his partly dressed condition hastened out as the deceased was passing, halted him, and declared his intention to settle their trouble, and the way in which he settled it cannot be approved. He has had a fair trial. He has received a punishment that is not commensurate with his crime.

He argues that the witnesses for the commonwealth were all related to or intimate friends of the deceased, and therefore personally interested in the matter. All this may be true, but we must not forget that the defendant is right vitally interested in this matter, so much so that, until in very recent years, a defendant was not allowed to testify. There are many contradictions in the evidence, but we have often written that a judgment will not be reversed because the jury believed one set of witnesses rather than another. McKenzie v. Commonwealth, 221 Ky. 276, 298 S. W. 693.

A map was used on the trial of this case to which the witnesses frequently referred in giving their evidence. That map was not brought to us and as a result much of this evidence is absolutely meaningless. It seems that what we have written in Conley v. Commonwealth, 208 Ky. 538, 271 S. W. 566, and Wolfingbarger v. Stanton, 220 Ky. 451, 295 S. W. 467, and the cases there cited, is having but little effect.

The judgment is affirmed.