## Lewis v. Commonwealth.

(Decided May 11, 1928.)

## Appeal from Perry Circuit Court.

1. Homicide.—In prosecution for murder, evidence held sufficient to establish the corpus delicti.

2. Homicide.—In prosecution for murder, admission of deceased's dying statement that he was "dead from the waist down" held proper as an exception to the hearsay rule, where deceased had said he was going to die and his doctor had told him so.

3. Criminal Law.—In prosecution for murder where evidence was conflicting, which set of witnesses was telling the truth was for the jury.

4. Criminal Law.—Where the evidence was conflicting so that evidence for one side was necessarily false, the reviewing court would not reverse merely because the jury believed one set of witnesses rather than the other.

5. Witnesses.—Where, in prosecution for murder, one who testified for defendant was, during commonwealth's rebuttal, recalled by commonwealth for further cross-examination, during which examination he was questioned relative to certain statements he had made, in order to lay grounds for impeaching his evidence by contradicting those statements, and commonwealth introduced evidence to contradict them, permitting such recall of the witness held not erroneous.

6. Homicide.—In prosecution for murder wherein the defense was that accused was protecting a third person from great danger, instruction held not erroneous for leaving out, as an element of defense, question whether the danger was apparent to such third person, since right of defendant to act on appearances of danger means right to act when to him the danger appears great, regardless of how it may appear to the person in whose defense he acts.

7. Homicide.—The right of a person to take life in self-defense arises from his belief in the necessity for it and the reasonableness of the grounds of his belief as judged by the danger as it appears to him and not from the belief of the jury as to the necessity of it or the belief of any one else as to that necessity.

H. C. EVERSOLE, JESSE MORGAN and F. J. EVERSOLE for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Upon his trial under an indictment charging him with the murder of Robert Wyatt, the appellant, Andrew Lewis, was found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for 21 years. This homicide was the result of a quarrel that arose while the deceased, the defendant, and some others were engaged in some sort of a game of cards which the witnesses refer to as "stud poker," and which was undoubtedly a game of chance, because the witnesses speak of it as "gambling."

In his efforts to reverse this judgment the defendant's first position is that the court erred in overruling his motion, made at the conclusion of the commonwealth's evidence, to instruct the jury to acquit him. This contention is based on what he alleges was the failure of the commonwealth to prove that Wyatt was dead. In other words, he is contending the commonwealth failed to establish the corpus delicti. The evidence does not support his contention, for not only had the commonwealth established by evidence that Wyatt was dead, but it had shown by the witness Reed that his death occurred about five weeks before the trial, and had shown by the witness Hester that he saw Wyatt after he was shot and killed, helped carry him home, and helped undress him. When the commonwealth showed that Wyatt was a healthy, able-bodied man, about 45 years of age, that he was shot by Andrew Lewis, twice in front, once through the breastbone and again two inches to the left of the left nipple, another shot in the back just to the left of the spinal column, and just below the shoulder blade, another wound in the back, two inches to the left of that one, that he fell almost immediately, and that he was

dead, it was not necessary for the commonwealth to bring further evidence to show that he died as a result of this shooting; but if that was necessary, that was supplied by the evidence of Dr. Bowles, in which he said that the two shots in front would have produced death, and that the shot near the backbone would have produced paralysis, and the evidence was that after he was shot all of the lower part of his body was paralyzed and without sensation, or, as the deceased expressed it in his dying statement, he was "dead from the waist down." The defendant Lewis is complaining of the admission of this dying statement, and says that it was hearsay. We are going to agree with him that it was hearsay, but such dying statements are admitted under one of the well-known exceptions to the hearsay rule. The wounded man had said that he was going to die, and the doctor had told him he was going to die. We can think of nothing that remained to be done to make this dying statement competent, and the defendant does not suggest anything.

His next contention is that he should be acquitted because the evidence shows that the deceased brought on the difficulty, and the evidence does show that the deceased was the first man to rise up and that he was angry, but the evidence for the commonwealth showed he was not doing anything to the defendant other than to accuse him and Steve Manns of being crooks and not playing fair and had pushed Steve Manns over on the bed. The evidence for the commonwealth is that the deceased was unarmed and was doing nothing to the defendant or to Manns at the time he was shot further than to abuse them and to accuse them of trickery. The evidence for the defendant was that the deceased had drawn a pistol on him, and then defendant began shooting before the deceased had an opportunity to use his pistol. Thus there was a conflict in the evidence, and the evidence of the defendant himself, as given in his cross-examination, weakened very much, if it did not in fact destroy, his statement about this pistol. But if that had not been the case, there would still remain a conflict in the evidence. It was for the jury to say which set of witnesses was telling the truth. The evidence for one set was necessarily false, and we will not reverse a case because the jury believed one set of witnesses rather than another. Blanks v. Com., 223 Ky. 484, 3 S. W. (2d) 1105.

A map was used on the trial of this case, as a result of which a portion of the evidence reads:

"Right here is the bunk we were gambling on. We were gambling right on this bunk here—this bunk was setting on the left-hand side of the car, and Bob was setting on this bunk, and gambling on this bunk, and I was over behind this bunk, and between the wall and bunk, and this colored fellow was down at the end of the bunk, hunkered down, not sitting on anything, and Wilson Strong was up at this end of the bunk, and Norah Howard and Steve Manns sitting over here, and when the trouble came up Bob slapped Steve across here."

This map was not brought here, and, as a result, a part of the transcript is as meaningless to us as that much Sanskrit. We hope that what we say here and what we have said in Royal Collieries Co. v. Wells, 210 Ky. 600, 276 S. W. 515; General Refractories Co. v. Morrison, 212 Ky. 411, 279 S. W. 651; Conley v. Com., 208 Ky. 538, 271 S. W. 566; Wolfinbarger v. Stanton, 220 Ky. 451, 295 S. W. 467; and Blanks v. Com., 223 Ky. 484, 3 S. W. 2d) 1105—may some day result in an improvement of the records that come here.

One Steve Manns testified for the defendant and during the course of its rebuttal evidence the commonwealth recalled Steve Manns for further cross-examination, during which he was questioned relative to certain statements he had made, in order to lay the grounds to impeach his evidence by contradicting those statements, and the commonwealth introduced evidence to contradict them. The defendant says this was erroneous, but we cannot agree with him.

He complains of this instruction, which was given on self-defense:

"If you shall believe from the evidence in this case that at the time the defendant, Andrew Lewis, shot and killed the deceased, Bob Wyatt, he, the said Andrew Lewis, believed and had reasonable grounds to believe in the exercise of a reasonable judgment that he, or Steve Manns, was then and there in danger of death or the infliction of some great bodily harm at the hands of the said Bob Wyatt, and the defendant believed and had reasonable grounds to believe in the exercise of a reasonable judgment that

it was necessary to so shoot and kill the deceased, Bob Wyatt, in order to avert that danger, real or to himself apparent, then you will find the defendant not guilty, upon the grounds of self-defense or apparent necessity therefor, or the defense of another or apparent necessity therefor.''

His criticism of this instruction is thus stated in his brief:

''As it leaves off in the instructions given by the court any apparent danger, real or apparent to the witness Manns, and makes the danger real or apparent to himself, appellant, the defendant Lewis, makes the instructions leave off any danger real or apparent to Manns and applies only to the appellant, Lewis, and for this reason counsel insist that the instruction was misleading to the jury.''

We cannot agree with his contention. If the defendant's action is to be excused because done in defense of himself or Manns, then he must act upon what reasonably appeared to him to be the danger to himself or Manns. He cannot know how the situation appeared to Manns, and cannot act on what appeared to Manns to be the danger. The defendant had the right to defend himself or to defend Manns against danger to either of them, as the defendant reasonably saw it, that is, as it reasonably appeared to the defendant; but he had no right to defend himself or Manns against danger to either of them as Manns saw it, that is, as it appeared to Manns, because the defendant cannot know how the situation appeared to Manns. The right of the defendant to act on appearances means to act on appearances to him. The instruction as given is correct, and, if given as the defendant suggests it should be given, it would have been erroneous. The right of a person to take life in self-defense arises from his belief in the necessity for it and from the reasonableness of the grounds of his belief as judged by the danger as it appears to him, and not from the belief of the jury as to the necessity of it or the belief of any one else as to that necessity. Biggs v. Com., 164 Ky. 223, 175 S. W. 379, Ann. Cas. 1916, 1096. If his act is to be justified or excused, it must be because of what he reasonably believed at the time, not what some one else believed.

The judgment is affirmed.