## Phillips v. Commonwealth.

(Decided June 19, 1928.)

### Appeal from McCreary Circuit Court.

1.  Homicide.—Evidence in prosecution for manslaughter held sufficient to sustain conviction.
2.  Homicide.—Where defendant was found guilty of manslaughter and not of murder, any error in instruction on murder was not prejudicial.
3.  Homicide.—Instruction relative to right to kill in self-defense or defense of others, restricting right to shoot and kill only in order to avert danger real or apparent to accused alone, and not to others, held not erroneous, since right of person to take life in self-defense or in defense of another depends on danger as it appears to him, and not as it appears to some one else.

H. M. CLINE, R. L. POPE, W. Y. BOSWELL and W. H. CAYLOR for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Clay—Affirming.

This is an appeal from a judgment convicting appellant of manslaughter and fixing his punishment at 21 years' imprisonment.

Appellant and deceased, Charley Davis, were partners in a logging contract which they had with the Stearns Lumber Company. At the time of the tragedy, they were at their logging camp in McCreary county. The camp consisted of four shacks adjoining the Stearns' railroad. Appellant's son, Jesse Phillips, and the latter's wife, Viola Phillips, also lived at the camp and Viola did the cooking. A number of women were in the habit of visiting the camp, some of them of questionable character. It appears that Viola Phillips had circulated a story concerning some man and one of these women. She claimed that Florence Hamlin was present when the occurrence took place. Shortly before noon on the day of the homicide Florence appeared at the camp and approached appellant for the purpose of inquiring why her name had been connected with the story. After talking with appellant for some time he told her that Charley Davis was the person to settle with, but that he was then drunk. She then approached Davis and they talked until they came near to the door of another shack. Standing in the door were Jesse Phillips, his wife, and Prudie Smith. Some discussion took place between Davis and Viola Phillips. Davis said that either the woman about whom the rumor was circulated or the woman who circulated the rumor would have to leave the camp. At this point Jesse Phillips told Davis to come on to dinner and that they would settle later about the tales. In the meantime Eugene Davenport, a boy 10 years of age, claims to have seen appellant go into the office, raise a mattress and get a pistol. After Jesse Phillips told Davis to come to dinner and that they would settle about the tales later, there is some conflict in the evidence. According to the witnesses for the commonwealth, Davis said, "I will settle it now," or "God damn you, I will settle it now." On the other hand, appellant and his witnesses claim that Davis said, "I am going to settle this God damn talk here or I will kill every one of you right now," and that following this remark he stepped towards the door and put his hand into his pocket. Thereupon appellant who was

standing inside the door fired twice. The evidence clearly shows that at the time he was shot Davis was standing outside the door, unarmed. He had a piece of paper in one hand, a pen or pencil in the other, and while talking was gesticulating with his hands.. There was further evidence by appellant and his witnesses that Davis was drunk, that he was a dangerous man and that he had made threats against appellant. Appellant denied that he got the pistol from under a mattress, but claimed that he carried the pistol all the time for his protection.

Even if it be conceded that Davis threatened to kill the whole crowd, yet as he was unarmed and had in one hand a piece of paper and in the other a pen or pencil, it is at once apparent that he was badly equipped for that purpose. In view of this fact and of all of the surrounding circumstances, it was for the jury to say whether appellant believed, and had reasonable grounds to believe, that he, or his son, or his daughter-in-law, was then and there in danger of death or great bodily harm at the hands of Davis. Not only so, but it was the peculiar province of the jury to fix the punishment, and, as a higher penalty might have been inflicted, it hardly can be said that the verdict is flagrantly against the evidence.

There is some criticism of the instruction authorizing the jury to find appellant guilty of murder. Inasmuch as he was found guilty of manslaughter, and not of murder, any error in the instruction on murder was not prejudicial to appellant's substantial rights.

Instruction 4 is as follows:

"Although you may believe from the evidence in this case that the defendant, Marion Phillips, shot and wounded and killed Charley Davis with a pistol loaded with powder, leaden balls, and other hard and explosive substances in McCreary county, Ky., and before the finding of the indictment in this case, yet if you further believe from the evidence that at the time he did so he believed, and had reasonable grounds to believe, that either he or Jesse Phillips or Viola Phillips was then and there in imminent danger of death or infliction of some great bodily harm at the hands of Charley Davis, and that it was necessary or was believed by the defendant in the exercise of reasonable judgment to be necessary, to shoot, wound, and kill the deceased in order to avert

the danger, real or to the defendant reasonably apparent, then you should acquit the defendant on the ground of self-defense and apparent necessity therefor, or the defense of another or others and the apparent necessity therefor.''

This instruction is criticised on the ground that it restricted the right of the accused to shoot and kill only in order to avert the danger real or apparent to him alone, and not to Jesse Phillips and wife, or either of them. A similar contention was made in the recent case of Lewis v. Commonwealth, 224 Ky. 502, 6 S. W. (2d) 502, and we there decided that the right of a person to take life in self-defense or in defense of another depends on the danger as it appears to him, and not as it appears to some one else.

A careful consideration of the record has disclosed no error prejudicial to appellant's substantial rights.

Judgment affirmed.