# Wooten v. Commonwealth.

March 20, 1945.

Benjamin Mazin for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear and Elmer Drake, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant, Wilson Wooten, was convicted and sentenced to life imprisonment for the murder of George Lundy. In seeking reversal of the judgment, he contends: (1) The verdict is not sustained by sufficient evidence, and appears to have been given under the influence of passion and prejudice; (2) the court erred in its instructions, and failed to instruct on the whole law of the case; (3) the court erred in admitting incompetent and irrelevant evidence offered by the Commonwealth; and (4) the court erred in refusing to admit competent evidence offered by appellant.

Appellant and Lundy met in Indianapolis, Indiana. The latter engaged the former to drive him to Bowling Green, Kentucky. From Bowling Green, they drove to Campbellsville, where, on the evening of March 6, 1944, they successfully solicited three young women to accompany them to a place where they could dance. After procuring two pints of rum, they drove to Woodland Inn, a roadhouse within a short distance of Lebanon. While Wooten was standing by a music box, three or four men stopped at the table where the girls were seated. After the men departed, Wooten drew his revolver and said he would hate to have to kill two or three of them. Shortly thereafter, he apologized and said he "didn't mean anything by it." The girls decided to go home, and arranged with a bystander to drive them. They walked out of the building and encountered Lundy, who, upon learning of their intention to go home, struck one of the girls and drew a revolver from his pocket. After flourishing the weapon, and warning those in his presence to stand back and not "fool with him", he walked into the barroom. Wooten followed and asked him to apologize to the girls. He said he did not owe anybody an apology, and again drew his pistol. All present, except Lawrence Taylor, Luther Taylor, and Wooten, fled to the dance hall. The evidence is conflicting as to what occurred thereafter. Lawrence Taylor, who worked at the Inn, testified that his attention was attracted by Wooten saying to Lundy, "Don't pull that gun on me." He looked in the direction of the two men and saw Wooten press a pistol against the body of Lundy. He stated that Wooten disarmed Lundy, whereupon Lundy stepped back and away from Wooten; at that time Lundy had no weapon, Wooten held a pistol in each

hand. Taylor asked Wooten to put the weapons up and not to cause any trouble. Lundy stated, "Don't worry, buddy, he won't." Wooten immediately started firing at Lundy; Taylor fled to the dance hall, and heard two shots after he left the room in which the shooting occurred. In all, Wooten fired eight shots into Lundy's body, as a result of which he immediately died. Luther Taylor's testimony was substantially the same as that given by his brother.

Appellant testified that, after he disarmed Lundy, the latter pushed away and reached for his hip; appellant knew Lundy owned two pistols, and was afraid that he was reaching for the second one with which to kill him. He thereupon fired eight shots at Lundy in defense of his own life. According to the testimony of the Taylor brothers, Wooten was out of danger at the time he fired the shots. Had he fired before disarming Lundy, his contention that the evidence was not sufficient to support the verdict, etc., would be more plausible; but, according to the witnesses for the Commonwealth, he waited until danger to his own life passed out of existence; and at least three shots were fired into Lundy after he had fallen helplessly to the floor. It is apparent the evidence introduced by the Commonwealth is sufficient to sustain the verdict, and that the verdict does not appear to have been rendered under the influence of passion or prejudice.

We pass to the complaint concerning the instructions. The court gave the following:

"Court's Instructions.

"No. 1. If you believe from the evidence beyond a reasonable doubt the defendant, Wilson Wooten, in this county and before the finding of the indictment herein, wilfully and not in his necessary or apparently necessary self-defense, shot George Lundy with a pistol and that said George Lundy presently died thereby, you should find the defendant guilty, guilty of wilful murder if the shooting was done with malice aforethought, guilty of voluntary manslaughter if the shooting was done not with malice aforethought but in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite passion beyond control.

"If you find the defendant guilty of wilful murder you will fix his punishment at death or confinement in

the state penitentiary for life, in your discretion. If you find him guilty of voluntary manslaughter you will fix his punishment at confinement in the penitentiary for not less than two and not more than twenty one years in your discretion.

"No. 2. The word 'wilfully', as used in these instructions, means 'intentionally'. The words, 'with malice aforethought', mean a predetermination to commit the act of killing without legal excuse, and it is immaterial at what time before the killing such a determination was formed.

"No. 3. If you shall believe from the evidence that at the time the defendant shot George Lundy, if he did so, he believed and had reasonable grounds to believe that he was then and there in dangr of death or the infliction of great bodily harm at the hands of said George Lundy and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot the deceased in order to avert that danger, real or to the defendant apparent, then you will acquit the defendant upon the ground of defense or apparent necessity.

"No. 4. If upon the whole case you have a reasonable doubt of the defendant having been proved guilty, you ought to find him not guilty; or if you find him guilty, but on all the evidence have a reasonable doubt as to whether he has been proved guilty of wilful murder or of voluntary manslaughter, you should find him guilty of the lower offense, voluntary manslaughter."

The first complaint is in respect to Instruction No. 2, and is that the court should have used the word predetermination, instead of the phrase, "such a determination". The phrase, "such a determination", as used in the instruction, could refer to none other than the predetermination previously used in the same sentence. The identical words were used in the model instructions written in Saylor v. Commonwealth, 210 Ky. 796, 276 S. W. 841. It is argued next that Instruction No. 3 is faulty because it failed to require appellant to believe that "at the time and under the circumstances no other safe means of averting the danger" to his own life appeared to be open. The instruction contended for has been approved in numerous decisions of this court; but, in each instance, the contention was that the court erred by including the words which were omitted in the in-

struction given in this case. The omitted words would restrict rather than extend the rights of the accused, for which reason he was not prejudiced by their omission.

Appellant next contends that the court should have given the following instruction to the jury: "You are instructed that however abusive may be the language of one of the combatants, it will not justify an assault or battery upon the other, but an assault and battery may be opposed by same, and, further, that before either can take the life of the other, or do him other great bodily harm and to be justified by the law, the one so doing must believe, and have reasonable grounds to believe, that as such he, himself, is in real or apparent danger of death, or some other great bodily harm impending at the hands of the other."

Undoubtedly, this is a correct statement of the law; but an instruction to this effect would have been more favorable to the Commonwealth than to the accused, and its omission, therefore, operated to appellant's benefit. That being true, it is unnecessary for us to determine whether in other circumstances such an instruction should be given.

It is next argued that appellant was prejudiced by the failure of the court to define the words "sudden affray." This contention at one time was supported by the decision rendered by this court in Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591. But, as pointed out in Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22, the court in the Gillis case did not hold that a failure to define "sudden affray" was ground for reversal. The Gillis case was explained in the same manner in Gurley v. Commonwealth, 218 Ky. 236, 291 S. W. 40. In Blanks v. Commonwealth, 223 Ky. 484, 3 S. W. 2d 1105, the contention that "sudden affray" should be defined met with a flat rejection. And finally, in Gibson v. Commonwealth, 226 Ky. 186, 10 S. W. 2d 646, 648, the Court said: "As to the second instruction, he (appellant) complains because the court did not define the expression 'sudden affray' used therein, and the case of Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591, is relied upon. This Gillis case has been explained time and again by this court as not sustaining the contention of the appellant. Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22; Gurley v. Commonwealth, 218 Ky. 236, 291 S. W. 40;

Blanks v. Commonwealth, 223 Ky. 484, 3 S. W. 2d 1105. In all these cases, we specifically held that a failure to define this expression is not ground for reversal.''

Appellant next complains that he was prejudiced by the failure of the court to give a separate instruction on voluntary manslaughter. The instruction on voluntary manslaughter was incorporated in the instruction which contained the charge in respect to murder. The instruction as given is in the form quite often used by trial courts, and which has been approved by this court, in many cases, one of which is Saylor v. Commonwealth, supra.

The first complaint in respect to the trial court's rulings on the evidence is directed at the alleged persistence of the Commonwealth's attorney in continuously interrogating witnesses in respect to a matter to which the court previously had sustained an objection. We quote from the record:

''Q. During all that time did you make any statement to Wooten? A. I asked him not to shoot any more.

''Counsel for Defendant objected; Objection sustained.

''Q. Please state whether or not you asked him, please don't shoot, he is dead already?

''Counsel for Defendant objected; Objection sustained; to which ruling of the Court, Counsel for Plaintiff excepted.''

Repeating an incompetent question once is not such persistence as is denounced in Steele v. Commonwealth, 199 Ky. 760, 763, 251 S. W. 1014, and other cases cited by counsel. But if it were, the objection to the question complained of should not have been sustained in the first instance; it was competent on the question of malice and frame of mind of the accused at the time of committing the homicide. One engaged in self-defense would not be apt to continue shooting after his victim was in such condition as no longer to be a threat to the life of the person shooting.

The court sustained an objection to the following question after it had been answered in the negative: ''Q. As I understand, you could not see the hands of the parties? A. No, sir.''

This action on the part of the court was not prejudicial, because the same witness, without objection, previously had been permitted to answer the question framed as follows: "Q. I will get you to state from where you were standing, with your back to the front, you were not in a position where you could see everything that occurred? A. I could see everything except the men's hands when they started shooting."

The complaint in respect to the alleged errors of the trial court in refusing to admit competent evidence cannot be entertained, because in no instance was an avowal made as to what the witness would have stated had he been permitted to answer the question to which an objection was sustained.

We perceive no error prejudicial to appellant's substantial rights. Wherefore, the judgment is affirmed.

Whole Court sitting, except Judge Latimer.