**Arthur GREENVILLE, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 21, 1971.

———◆———

John Tim McCall, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., James M. Ringo, Asst. Atty. Gen., for appellee.

The appellant, Arthur Greenville, Jr., shot and killed Lucille Johnson in her apartment at the rear of 626 Park Avenue in Louisville. The fatal weapon was a .38-caliber revolver owned by the victim. Arthur has never denied the shooting, but claims it was an accident, explaining that he had just loaded the gun and it went off as he closed the cylinder. He appeals from a judgment entered pursuant to a jury verdict finding him guilty of murder and sentencing him to life imprisonment. KRS 435.010.

Arthur and Lucille met in April of 1969 and were living together, staying some of the time at his place and some of the time at hers. She was a widow. Arthur says they intended to make a trip to Chicago over the 4th of July and get married on the way back. The fatal shooting took place in her apartment at about 11:00 A.M. on Wednesday, July 2, 1969, the day they had planned to leave.

■ The first claim of error is that the court did not instruct the jury on voluntary manslaughter, KRS 435.020. The only manner in which this omission was brought to the attention of the trial court was by that portion of a motion for new trial asserting that the court committed prejudicial error "in not instructing on the whole law of the case." We are of the opinion that this was not sufficiently specific to raise the question. Cf. Beets v. Commonwealth, Ky., 437 S.W.2d 496, 499 (1969); Stanley's Instructions to Juries, § 797 (1969–70 Supp.). However, since the case must be reversed on another ground it is necessary to discuss the point anticipatory to a new trial.

■ Despite Arthur's insistence that all relations between him and Lucille were in a perfect state of tranquility at the time of the tragedy, there was ample evidence from which a jury could reasonably infer that the killing was a crime of passion. Arthur admitted, for example, that on the previous

Sunday he had found her with another man, whom he eventually ordered to leave, and that she had refused to accompany him to church or to prepare supper for him on that day. He admitted also that he had locked her out of the apartment earlier in the morning of the shooting. He claims he did this in fun, but a neighbor, Dessie Garvin, testified that they had a heated exchange over it, in which "she called him a choice name about locking the house up. And she said, 'He locked me out of my own house.' And he said, 'You deserve to be locked out.'" Dessie further testified that Arthur "appeared very angry," and it is obvious from both Arthur's and Dessie's testimony that although Arthur may have been planning a trip for himself and Lucille that day, Lucille had proceeded to consume a full load of beer and did not intend to go anywhere. Clearly, we think, it would not require any speculation to conclude that Arthur just got fed up with Lucille and shot her in a sudden rage. If the evidence in another trial is substantially the same there should be an instruction on voluntary manslaughter. Considering also that a jury might very well conclude that the shooting was not intentional but resulted from a wanton or reckless handling of the gun, the instructions should cover the lesser degrees of involuntary manslaughter as well, KRS 435.022(1) and (2).

A short while before the fatal shooting Arthur had gone to his place of employment and Lucille was in the back yard drinking beer and talking to her neighbor, Dessie Garvin. A portion of Dessie's testimony under cross-examination by Arthur's counsel went as follows:

Q. "You all were just talking back and forth?"

A. "Yes."

Q. "Did she tell you that she and Arthur were getting ready to take a trip that day?"

A. "I was told not to say what she said."

Q. "Well, if I ask you you can go ahead and say it."

A. "She told me that he was going to kill her."

At this point defense counsel promptly moved that the jury be discharged and a mistrial declared. The motion was overruled. At the conclusion of Dessie's testimony counsel renewed the motion and also moved that the jury be admonished not to consider Dessie's statement about what Lucille had told her. Both motions were overruled.

It does not require an examination of hoary precedents to recognize at once that this unsolicited and incompetent hearsay information interjected by Dessie was extremely prejudicial to Arthur's case. Certainly the question asked by defense counsel was not calculated to invite such an unresponsive answer. It went to the very crux of the case, and we think it clearly called for a mistrial.

During cross-examination counsel for the Commonwealth interrogated Arthur as follows:

Q. "Didn't you have pretty violent arguments? Isn't it a fact that you shot at her on other occasions?"

A. "No, I never shot at her."

Q. "Never shot at her?"

A. "I never fired that gun until that day when it went off."

Conceiving this line of questioning to be prejudicial and unfounded, counsel for Arthur moved again for a mistrial and was overruled, after which counsel for the Commonwealth continued as follows:

Q. "And it is your testimony that you never fired that gun in that house prior to that day?"

A. "I did not."

Q. "Did she ever shoot at you?"

A. "No."

Q. "Nobody ever shot at anybody prior to that day?"

A. "No."

Whether Arthur and Lucille had been having trouble recently prior to the shooting was, of course, a relevant subject of inquiry bearing upon his state of mind when the event took place. Nevertheless, after he had denied it, and in view of the fact that the Commonwealth apparently had no evidence to the contrary, counsel's persistence in pursuing the matter at least approached the borderline of prejudicial impropriety. Whether it crossed the line we need not decide, trusting that due circumspection will be observed in this respect upon a retrial of the case. See Alexander v. Commonwealth, Ky., 463 S.W.2d 334, 339 (1971); Wooten v. Commonwealth, 299 Ky. 598, 186 S.W.2d 652, 655 (1945).

The judgment is reversed for a new trial.

All concur.