# Howard et al. v. Commonwealth.

(Decided October 4, 1929.)

A. J. MAY and EDWARD L. ALLEN for appellants.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Wiley Howard, Kenney Howard, Green Conley, and Ernie Manns were jointly indicted charged with the

murder of Charlie Turner. Turner was shot in Knott county, but he was taken to a hospital in Floyd county, where he died, and the indictment was returned in the latter county. Ernie Manns demanded a separate trial, and on the trial of the remaining three defendants, Green Conley was acquitted, and Wiley Howard and Kenney Howard were convicted of manslaughter and the punishment of each fixed at confinement in the state penitentiary for a period of ten years. Wiley Howard is the father of Kenney Howard.

As grounds for reversal, it is urged that the instructions are erroneous and that the court erred in admitting incompetent evidence.

The shooting occurred about one mile above the mouth of Caney fork on Right Beaver creek in Knott county on Saturday, September 22, 1928. On that day a Baptist Association was being held on Steele creek, a tributary of Right Beaver creek. Just across the hill from the place where the association was being held and on Right Beaver creek, a number of people had congregated for the purpose of trading horses, among those present being the appellants, Green Conley, and the latter's father R. L. Conley. The deceased, Charlie Turner, left Wayland shortly after noon and started up Right Beaver creek to the place where the horse traders were assembled. He was riding a horse. A short distance above Wayland he overtook Troy Taylor, who was walking. Turner was under the influence of liquor when he overtook Taylor, and they procured another pint of whisky and proceeded up the creek. They met a boy accompanied by a dog, and Turner drew a pistol and fired at the dog. They later overtook Ralph Blankenship, and all three got on Turner's horse. They met Claude Conley and Turner, who had a gun in his hand, asked Conley if he must shoot, and Conley said, "Yes, sir, G—— d—— it, shoot if you want to." Turner fired the gun, which was pointed toward the ground, and the bullet passed through a shoe worn by Blankenship, who was riding behind him. Conley and Turner then started toward each other, but Taylor interfered and told Turner that Conley was a friend, and Turner said, "All right, call him back and give him a drink of liquor out of the bottle." At the mouth of Caney creek they met Jessie Vance and Sherman Collins. Collins had a pint of whisky. After all the whisky had been consumed, Turner and Collins got into an argument about getting more whisky, and Turner

struck Collins in the face. Blankenship took Turner's gun, drew it on Collins, and said, "Stick your hands up." Jessie Vance took a .45-caliber pistol out of a holster that Collins was carrying.

Turner, Vance, Blankenship, and Taylor then proceeded up Beaver creek, all riding Turner's horse— Turner in front and Taylor, Blankenship, and Vance in the order named. Turner had fired all the cartridges that he had and wanted to turn back, saying, "A man without cartridges is not worth anything." Jessie Vance said he had six cartridges in the gun he had taken from Collins, and if anything should happen he would use these cartridges. They met Millard Rice, Ernie Manns, and a number of other persons, some of whom were riding in a wagon and some on horses and mules. Turner drew his gun on Rice, who said, "Don't do that, Charlie, I got nothing against you." Turner struck Rice's horse with his gun as Rice passed him and made further threatening demonstrations, but the incident passed off without serious consequences. They proceeded up the creek and met a boy on a horse whom they later learned was the appellant Kenney Howard.

All of the persons present at the trading ground left about 3:30 o'clock in the afternoon and started down Beaver creek toward Wayland. Kenney Howard was in front, and behind him were Green Conley, Bob Conley, and Wiley Howard in the order named and 20 or 25 other persons, all riding on mules or horses. When Turner and his crowd first met Kenney Howard, no other person was in view. Turner and Howard had a short conversation relative to trading horses and Vance told Howard to go home. Howard said, "Well, I don't have a fashion of going anywhere until I get ready." Thereupon Vance dismounted, walked over to where Howard was sitting on his horse, and struck him over the head with the .45-caliber gun that he had taken from Collins. He then drew the gun on Howard and told him to go on. Howard rode 50 or 75 yards down the creek, turned his horse around, drew a gun from under his shirt, and he and Vance began shooting at each other. During this exchange of shots, Charlie Turner was shot in the hand, and Green Conley, who had ridden up in the meantime, was shot in the heel. Those who had left the trading ground and had been riding down the creek behind Kenney Howard, hearing the shooting in front of them, rode up to the scene. Turner dismounted, snatched the pistol out of

Vance's hand, and fired one shot at Kenney Howard. From this point the evidence is in hopeless conflict.

According to some of the evidence for the commonwealth, Jessie Vance took the gun from Turner, telling him it would get him killed. Turner then walked across the road, and Kenney Howard, Wiley Howard, Green Conley, and others surrounded him and began shooting. They continued shooting until he staggered over the bank of the road and fell. He was shot eight times with three different caliber guns—.32, .38, and .45. Four bullets entered his back, one his side, one his chest, one passed through his arm, and one through his leg.

The evidence for the defendants tended to show that Turner retained possession of the .45-caliber pistol and was in the act of shooting Kenney Howard and Wiley Howard when the Howards shot him. Vance testified that before the second shooting occurred he grabbed Turner and attempted to take the .45-caliber pistol from him in order to avert further trouble, but that others present closed in, and in the scuffle that ensued Turner's pistol disappeared and Vance ran. The shooting that resulted in Turner's death followed immediately.

It is the commonwealth's theory that Turner was disarmed and that the wound in his chest was produced by a bullet from the .45-caliber pistol fired by one of the appellants or some one acting in concert with them, and that Turner at the time was unarmed and in a helpless condition. The conduct of Turner was highly provocative, but there was some proof that he was shot at a time when no one present was in danger of being injured by him, and the question of the guilt or innocence of the appellants was for the jury.

In the instruction on murder was included an instruction on conspiracy, and complaint is made of this on the theory that no evidence was introduced tending to show the existence of a conspiracy. Since appellants were not found guilty under this instruction but under the manslaughter instruction, they were not prejudiced by the giving of a conspiracy instruction; but as the case must be reversed on other grounds, the conspiracy instruction will be omitted from instruction No. 1 on another trial, if the evidence is substantially the same. There is no evidence that any of the defendants had ever had any difficulty with Turner prior to the time he was killed, nor that they had any reason to believe they would meet him on that day. Some of them were not even ac-

quainted with him. The difficulty arose suddenly and unexpectedly, and there is no evidence that a conspiracy to kill Turner was formed during the pendency of the difficulty that terminated in his death.

The instruction on self-defense is criticised because it limits appellants' right to defend as to Turner only, and it is insisted that this instruction should have told the jury that the appellants had the right to defend themselves not only against Turner but against his associates, Vance, Taylor, and Blankenship. There is nothing in the record to authorize an extension of appellants' right to defend themselves or each other against any one but Turner. Evidence introduced by them showed that Vance had left the scene and that they were in no danger from him. There is no evidence that Taylor or Blankenship took any part in the difficulty. Neither of the appellants claimed that he believed he was in danger of being injured by any one other than Turner.

Instruction No. 5 reads as follows:

> "If the jury believe and find from the evidence beyond a reasonable doubt that the defendants, Wiley Howard, Green Conley or Kenney Howard, or either of them, willfully brought on the difficulty in which Turner lost his life and thereby brought about the condition endangering their lives, or bodily harm if their lives were so endangered or danger of bodily harm to them existed, or if you believe and find from the evidence beyond a reasonable doubt that after the starting of an altercation between Turner and said defendants or either of them, said altercation ceased and said Turner in good faith withdrew therefrom and said defendants, or either of them, wilfully renewed same and by reason thereof their or his lives or bodily harm to them or him was put in danger, defendants or the ones so renewing said altercation are not entitled to rely upon the law of self-defense as set out in Instruction No. 3."

It is contended that the phrase in the instruction quoted above, reading, "If the jury believe and find from the evidence beyond a reasonable doubt that the defendants, Wiley Howard, Green Conley or Kenney Howard, or either of them, wilfully brought on the difficulty," without explaining to the jury how or by what means the

difficulty was "brought on" by the defendants, was erroneous. This contention is sound. Similar instructions have been before this court frequently and without exception have been condemned. The language is too general and gives the jury too much latitude. The instruction, conceding for the present that there was evidence authorizing such a qualification, should have pointed out the manner in which the defendants brought on the difficulty, instead of leaving it to inference on the part of the jury. In McGowan v. Commonwealth (Ky.) 117 S. W. 387, 389, in condemning a similar instruction, the court said: "The error in this instruction is that it fails to define how the defendant 'brought on the difficulty.' The jury should have been instructed that if the defendant brought on the difficulty by striking or attempting to strike the deceased, or by cutting or attempting to cut him, he should not be excused on the ground of self-defense." To the same effect are Allen v. Commonwealth, 86 Ky. 642, 6 S. W. 645, 9 Ky. Law Rep. 784; Wilcoxen v. Commonwealth, 23 S. W. 195, 15 Ky. Law Rep. 261; Greer v. Commonwealth, 85 S. W. 166, 27 Ky. Law Rep. 333; Riddell v. Commonwealth, 111 S. W. 301, 33 Ky. Law Rep. 764; Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801; Hacker v. Commonwealth, 158 Ky. 783, 166 S. W. 235. However, there is no evidence that appellants or any one associated with them brought on the difficulty. The evidence for the commonwealth shows that the difficulty was brought on by Turner and Vance, and the self-defense instruction should not have been qualified in this respect. There is evidence tending to show that Turner withdrew from the altercation and that appellants renewed it, and in the latter part of instruction No. 5 the appellants' right of self-defense was qualified if the jury believe this evidence and this was the only qualification authorized by the evidence.

Complaint is also made of the admission of the testimony of Bert Nichol and Will Turner. These witnesses met Green Conley and Kenney Howard probably an hour or an hour and a half after the shooting and about five miles from the place where the difficulty occurred. Nichol was in an automobile, and testified that when he met Conley and Howard the latter fired a shot about ten feet in front of the car. Will Turner, who met Conley and Howard near the same point, testified that he thought Howard was under the influence of liquor. This testimony was incompetent and should have been excluded.

744

It disclosed other offenses committed by Howard, but did not tend to show motive, identity, or knowledge, and the proven acts were too far removed in time and place to constitute a part of the res gestae. Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431.

Appellants also complain of the action of the trial judge in propounding questions to the various witnesses. We have carefully examined the record and find that the questions propounded by the judge were for the purpose of clarifying the testimony and in no instance evinced any bias on his part and were not prejudicial to the substantial rights of the appellants.

For the reasons indicated the judgment is reversed, with directions to grant appellants a new trial, and for further proceedings consistent herewith. ·